ELLIS v STATE FARM INSURANCE COMPANY

AUTOMOBILES—INSURANCE—MOTORCYCLES—LIABILITY INSURANCE—
  UNINSURED MOTORIST COVERAGE—EXCLUSIONARY CLAUSES—IN-
  SURED PARTIES.
    It was improper, under a prior statute now repealed, to permit an
    insurance company to take away uninsured motorist coverage
    through a self-devised exclusionary clause; therefore, once a
    person became an "insured" under the definition of the term in
    the liability section of an insurance policy, and so long as
    insured status existed, uninsured motorist coverage had to be
    extended unless rejected in writing by the named insured, for
    protection from injuries caused by uninsured motorists wher-
    ever the insured happened to be and whatever the insured
    happened to be doing at the time of the injury (MCLA
    500.3010, 500.3012; MSA 24.13010, 24.13012).

Appeal from Jackson, Gordon W. Britten, J. Submitted June 7, 1977, at Lansing. (Docket No. 30825.) Decided September 8, 1977. Leave to appeal applied for.

Complaint by Wilbert H. Ellis against State Farm Insurance Company to recover damages for the wrongful death of the plaintiff's stepson, Craig Hull, when the motorcycle which he was riding was struck by an uninsured motorist. The Secretary of State, Director of the Motor Vehicle Accident Claims Fund, intervened as a defendant. Judgment entered declaring that Craig Hull was covered by the uninsured motorist provision of an

REFERENCES FOR POINTS IN HEADNOTE
7 Am Jur 2d, Automobile Insurance § 135 et seq.
Rights and liabilities under "uninsured motorists" coverage. 79
  ALR2d 1252.
Automobile insurance: what constitutes an "uninsured" or "un-
  known" vehicle or motorist, within uninsured motorist coverage.
  26 ALR3d 883.

automobile insurance policy issued by State Farm to the plaintiff. Defendant State Farm appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Joseph B. Bilitzke* and *Carl K. Carlsen,* Assistants Attorney General, for intervening defendant Secretary of State.

*Kelly, Kelly & Kelly,* for defendant State Farm Insurance Company.

Before: DANHOF, C. J., and T. M. BURNS and A. E. KEYES,* JJ.

DANHOF, C. J. Defendant State Farm appeals as of right from a declaratory judgment dated October 22, 1976, issued by the Jackson County Circuit Court. That judgment found that plaintiff's stepson, Craig Hull, was covered under the uninsured motorist coverage provided in a policy of insurance issued by State Farm to plaintiff Ellis. The State Farm policy was issued on plaintiff's automobile. On August 7, 1973, Craig Hull was fatally injured in a collision with an uninsured motorist. At the time of the accident, Craig Hull was operating a motorcycle which he owned and for which he had purchased liability insurance. However, he had expressly rejected uninsured motorist coverage under that policy.

Clauses in both the liability and uninsured motorist sections of the policy issued by State Farm to plaintiff Ellis excluded coverage of the motorcycle. Assuming that Craig Hull was not protected from the acts of uninsured motorists under the terms of the uninsured motorist clause in the policy issued by State Farm, the Secretary of State

---

* Circuit judge, sitting on the Court of Appeals by assignment.

argues that the exclusionary clause is void as against public policy and that under the law at the time of the accident, the policy must be read to include such coverage.

MCLA 500.3010; MSA 24.13010, in effect at the time the policy was issued and the time the accident occurred, read in part:

"No automobile liability or motor vehicle liability policy insuring against loss * * * shall be delivered or issued for delivery * * * unless coverage is provided therein or supplemental thereto * * * *for the protection of persons insured thereunder* who are legally entitled to recover damages from owners or operators of uninsured motor vehicles * * * unless the named insured rejects such coverage in writing as provided herein. (Emphasis supplied.)"

In *Boettner v State Farm Mutual Insurance Co,* 388 Mich 482, 488; 201 NW2d 795 (1972), the Court held that the uninsured motorist protection required by the statute was not limited to injuries suffered while occupying the insured vehicle. In *Blakeslee v Farm Bureau Mutual Insurance Co of Michigan,* 388 Mich 464, 474; 201 NW2d 786 (1972), the Court found that the statutory language was mandatory and had the clear legislative purpose of reducing claims against the motor vehicle accident claims fund and that it would be unconscionable for an insurance company to charge for the required coverage while using a self-devised clause to exclude recovery by the "insured".

The liability coverage of the State Farm policy defines the "insured" as including "if *residents* of the same household, the relatives of the first *person* named in the declarations, or of his spouse". At the time of the fatal accident Craig Hull was a

household resident relative of the named insured or his spouse. Therefore, the policy's own definitional terms conferred insured status on Craig Hull at the time of the accident by virtue of his being a household resident relative. Since Craig Hull was a person insured under the liability section of the policy, MCLA 500.3010; MSA 24.13010 necessarily requires uninsured motorist coverage for him under the policy. Such coverage must therefore be read into the State Farm policy. See MCLA 500.3012; MSA 24.13012.

State Farm contends that the decision of this Court in *Nunley v Turner,* 57 Mich App 473; 226 NW2d 528 (1975), supports its position that the exclusion clause is valid. The facts of the *Nunley* case are very similar to those in the instant case. In *Nunley* the opinion stated:

"It is hard to see how Farmers could possibly be held liable to plaintiff. Such a rule of law, if extended, would mean that an insurer to whom a premium had been paid on one car would be liable for uninsured motorist coverage on any number of motor vehicles bought by an insured subsequent to the original purchase of uninsured motorist coverage without purchasing such additional coverage." 57 Mich App at 483–484.

While this is a forceful and logically appealing argument, we cannot ignore the holdings in the Supreme Court decisions in this area that the statute is mandatory, that it *requires* coverage that is personal to the insured rather than limited to injuries which occur in the insured vehicle, and that the purpose of the statute was to reduce claims on the motor vehicle accident claims fund.

State Farm contends that *"Nunley, Rice [infra],* and *Priestly [infra],* establish that public policy, as expressed in the statute, voids exclusionary lan-

guage of uninsured motorist coverage only in instances where the plaintiff would be covered under the liability sections of the policy". We believe this argument ignores the result in *Boettner, supra*. A similar argument was rejected by the Supreme Court in *Pappas v Central National Insurance Group of Omaha,* 400 Mich 475; 255 NW2d 629 (1977).

The opinion reads in part:

"Proof of the facts Central demands triggers the insurer's liability, but we do not believe it has any effect on a passenger's status as an insured under the terms of the policy." 400 Mich at 482.

The Court also states in that opinion:

"That the plaintiff in *Blakeslee* was a named insured responsible for paying premiums whereas Pappas was not does not undermine the authority of that case. The critical fact in *Blakeslee* was that statutorily required coverage was being limited.

" * * * The legislative policy expressed in the statute is not affected by circumstances peculiar to the situation of a particular plaintiff." 400 Mich at 480–481.

We are not unmindful of the fact that *Nunley v Turner, supra, Rice v Detroit Automobile Inter-Insurance Exchange,* 66 Mich App 600; 239 NW2d 675 (1976), and *Priestly v Secretary of State,* 67 Mich App 96; 240 NW2d 282 (1976), all appear to reach results contrary to the decision in the instant case. We read those cases as allowing the insurer and the insured to narrowly define the class of persons protected by the uninsured motorist coverage, but we read *Pappas, supra,* as rejecting such narrow definitions. We further read *Nunley, Rice,* and *Priestly* as attempting to circumscribe the factual situation in which the insured

party injured by an uninsured motorist may re-
cover under a policy providing the statutorily
required coverage. *Pappas, supra,* allows no such
circumscription.

In the instant case and its two companion cases,
*Bradley v Mid-Century Insurance Co,* 78 Mich App
67; 259 NW2d 378 (1977), and *Hickman v Commu-
nity Service Insurance Co,* 78 Mich App 1; 259
NW2d 367 (1977), the plaintiff is or represents an
"insured" under the liability section definition of
the insurance policy in question. Once having been
afforded this status, and so long as it lasts, MCLA
500.3010; MSA 24.13010 requires that an offer of
uninsured motorist insurance must be extended,
for protection from injuries caused by uninsured
motorist wherever the "insured" happens to be
and whatever the "insured" happens to be doing
at the time of the injury.

Since the insurance policy issued by State Farm
conferred insured status on Craig Hull by virtue of
his being a household resident relative, and not by
virtue of his operating any particular given vehi-
cle, he had insured status at the time of the
accident, whether or not State Farm was liable
under the liability coverage of the policy, and
therefore was necessarily covered by the unin-
sured motorist section of the policy. Under the
statute such coverage could not be limited by self-
devised exclusionary clauses written into the pol-
icy by State Farm.

We agree with the well-written and well-rea-
soned opinion of the circuit court wherein Judge
Britten pointed out:

"The question becomes whether the public policy
behind the statute is for the protection of vehicles or
persons.

\* \* \*

"The uninsured motorist coverage required by the

statute provides that no policy shall issue without coverage for 'the protection of persons insured thereunder'. The coverage appears to be personal in nature and would logically remain with the insured regardless of the circumstances when he became involved with the uninsured motorist."

Affirmed. No costs.