BRADLEY v MID-CENTURY INSURANCE COMPANY

HICKMAN v COMMUNITY SERVICE INSURANCE COMPANY

ELLIS v STATE FARM INSURANCE COMPANY

RUESING v AETNA CASUALTY & SURETY COMPANY

STATE FARM INSURANCE COMPANY v DAVIDSON

AMERICAN FIDELITY FIRE INSURANCE COMPANY v WILLIAMS

FLETCHER v AETNA CASUALTY & SURETY COMPANY

SCHIGUR v WEST BEND MUTUAL INSURANCE COMPANY

Docket Nos. 60483, 60605, 60615, 60606, 60614, 60003, 60861, 60928, 60945. Argued January 9, 1979 (Calendar Nos. 15-23).—Decided June 24, 1980.

REFERENCES FOR POINTS IN HEADNOTES

[1, 6-8, 11, 23] 7 Am Jur 2d (Rev), Automobile Insurance § 293.

7 Am Jur 2d, Automobiles and Highway Traffic § 301.

Rights and liabilities under "uninsured motorists" coverage. 79 ALR2d 1252.

Type of accident or occurrence which will give rise to liability under unsatisfied claim and judgment fund statute. 7 ALR3d 822.

Who is within protection of statutes creating indemnity funds for losses caused by uninsured or unknown motorists. 10 ALR3d 1166.

[2, 3, 5, 6, 9, 10, 12-14, 23] 7 Am Jur 2d (Rev), Automobile Insurance § 294.

[4, 15-18, 23, 24] 7 Am Jur 2d (Rev), Automobile Insurance §§ 298, 329.

Uninsured motorist insurance: validity and construction of "other insurance" provisions. 28 ALR3d 551.

Automobile liability policy: choice of law as to validity of "other insurance" clause of uninsured motorist coverage. 83 ALR3d 321.

[5, 7] 7 Am Jur 2d (Rev), Automobile Insurance § 225.

What is a "non-owned" automobile within the meaning of the coverage clause of an automobile liability policy. 83 ALR2d 926.

[7] 7 Am Jur 2d (Rev), Automobile Insurance § 189.

[8, 10, 11, 14] 7 Am Jur 2d (Rev), Automobile Insurance §§ 238-245.

[10, 11] 7 Am Jur 2d (Rev), Automobile Insurance §§ 189, 247.

[13] 7 Am Jur 2d (Rev), Automobile Insurance §§ 239, 240, 251-253.

[19, 21] New Topic Service Am Jur 2d, No-Fault Insurance §§ 17, 18.

Certain contractual limitations on uninsured motorist endorsements of automobile insurance policies are at issue in these cases.

Donald J. Bradley, while operating his motorcycle on May 4, 1972, was involved in an accident with an uninsured motorist and was severely injured. The motorcycle was insured, with uninsured motorist coverage, by Central National Insurance Company. Bradley also owned a car which was insured by defendant Mid-Century Insurance Company. At the time of the accident, Bradley was residing with his parents, and his father owned a car which was insured by defendant Citizens Mutual Insurance Company. Bradley received a settlement of $20,000 from Century National, the insurer of the motorcycle; but defendants Mid-Century and Citizens Mutual denied his claims, and the plaintiff brought an action for declaratory judgment against them. The Genesee Circuit Court, Earl E. Borradaile, J., granted summary judgment for the defendant insurance companies. The Secretary of State intervened as a defendant and appealed on the ground that the "owned automobile" exclusion of the defendant insurers' policies violated the former provision of the Insurance Code which required an offer of uninsured motorist coverage to the persons "insured" under the policy. The Court of Appeals, Danhof, C.J., and T. M. Burns and Keyes, JJ., reversed and remanded for further proceedings (Docket No. 29099). Defendants Mid-Century Insurance Company and Citizens Mutual Insurance Company appeal.

Jerry Hickman owned a motorcycle and paid $35 into the Motor Vehicle Accident Claims Fund because it was uninsured. He was riding the motorcycle on October 1, 1971 when he was injured in an accident with Osee V. Griggs, an uninsured motorist who was driving an uninsured automobile. Hickman's wife, Nancy, owned a car which was insured for liability by Community Service Insurance Company with an uninsured motorist endorsement having an "owned automobile" exclusion. The Hickmans brought an action for damages against defendants Community Service Insurance Company, Griggs, and the Secretary of State as the administrator of the Motor Vehicle Accident Claims Fund. The Genesee Circuit Court, Philip C. Elliott, J., granted a declaratory judgment that Jerry Hickman was insured under his wife's policy, and that the "owned

[20] 7 Am Jur 2d (Rev), Automobile Insurance §§ 326-329.
[22, 23] New Topic Service Am Jur 2d, No-Fault Insurance §§ 1, 15.
[24] New Topic Service Am Jur 2d, No-Fault Insurance § 22.
[25] New Topic Service Am Jur 2d, No-Fault Insurance §§ 1, 15.

automobile" exclusion was valid, but that a motorcycle was not within the terms of the exclusion. The Court of Appeals, Danhof, C.J., and T. M. Burns and Keyes, JJ., affirmed on the ground that the exclusionary clause violated the former provision of the Insurance Code (Docket No. 27257). Defendants Community Service Insurance Company appeals.

Wilbert H. Ellis brought an action against his automobile insurer, State Farm Insurance Company, for declaratory judgment arising out of the death of his stepson, Craig Hull, in an accident between Hull's motorcycle and an uninsured motorist on August 10, 1973. The motorcycle was insured by Hull for liability, but he had expressly rejected uninsured motorist coverage in his policy. The Secretary of State intervened as a defendant. The Jackson Circuit Court, Gordon W. Britten, J., granted a declaratory judgment for the plaintiff that the "owned motor vehicle" exclusion of his policy did not preclude the claims against the plaintiff's insurer arising out of Hull's death. The Court of Appeals, Danhof, C.J., and T. M. Burns and Keyes, JJ., affirmed on the ground that the exclusionary clause violated the former provision of the Insurance Code (Docket No. 30825). Defendant State Farm Insurance Company appeals.

Francis Ruesing, Sr., insured his automobile with Aetna Casualty & Surety Company under a policy with an "owned vehicle" exclusion. Ruesing's son took the automobile without permission, allowed a friend to drive it, and was killed in an accident with another automobile through the friend's negligence in driving the car. Ruesing, as administrator of his son's estate, and for himself and his wife brought an action against Aetna for declaratory judgment under the uninsured motorist coverage of the policy. The Marquette Circuit Court, Edward A. Quinnell, J., decided that the exclusionary clause applied to Ruesing's son as an "insured" because he was a relative residing with plaintiff Ruesing and granted summary judgment for the defendant. The Court of Appeals, R. M. Maher, P.J., and M. F. Cavanagh and D. F. Walsh, JJ., affirmed in an unpublished per curiam opinion (Docket No. 28760). Plaintiffs appeal.

Gary Davidson had two insurance policies, one on his motorcycle and one no-fault policy on his automobile, with State Farm Mutual Automobile Insurance Company. Each policy provided uninsured motorist coverage up to $20,000 and was issued after the repeal of the uninsured motorist amendment to the Insurance Code. Davidson was injured when his motorcycle was struck by an uninsured motorist. He collected $20,000 under the uninsured motorist endorsement to the motorcycle policy and sought also to "stack" the coverage under the no-fault

policy on his automobile. State Farm refused to pay the second claim and brought an action for declaratory judgment based on the "limits of liability", "other insurance" and "owned vehicle" exclusions in the no-fault policy. The Wayne Circuit Court, Thomas J. Brennan, J., granted summary judgment for the plaintiff. The Court of Appeals, T. M. Burns, P.J., and Bronson and Simon, JJ., affirmed in an unpublished per curiam opinion (Docket No. 29626). Defendant appeals.

American Fidelity Fire Insurance Company insured two automobiles owned by Henry Williams under a policy which included no-fault bodily injury and property damage liability coverage, collision and theft coverage, and residual uninsured motorist coverage. Williams' wife, Catherine, and her passengers Beatrice and David Gilmer, were all injured when one of the cars was involved in an accident with an uninsured motorist in West Virginia. American Fidelity paid Catherine Williams and the Gilmers personal protection benefits under the no-fault coverage of the policy. Mrs. Williams and the Gilmers demanded arbitration of the limits of uninsured motorist coverage under the policy. American Fidelity brought an action for a declaratory judgment that it had a right, under a set-off clause of Williams' insurance policy, to reduce the uninsured motorist benefits owed to defendants Mrs. Williams and the Gilmers by the amount of no-fault personal protection benefits paid to them. The Wayne Circuit Court, Joseph A. Moynihan, Jr., J., granted summary judgment for the defendants. The Court of Appeals, R. M. Maher, P.J., and Borchard, J. (N. J. Kaufman, J., dissenting), reversed on the ground that the provision of the policy is clear and unambiguous that the plaintiff is entitled to a set-off (Docket No. 29993). Defendants appeal.

Scott S. McQueen, a minor, was severely injured in a collision between his brother's motorcycle, on which he was a passenger, and an uninsured motorist. His mother, Phyllis D. Fletcher, as his guardian, on a consent judgment of $99,000, collected the liability limit of $20,000 from the Motor Vehicle Accident Claims Fund, and $38,000 from the uninsured motorist coverage on the motorcycle and an automobile owned and insured by Scott's brother. Mrs. Fletcher and her husband insured two family vehicles under one policy issued by Aetna Casualty & Surety Company which had a $20,000 limitation of liability on each automobile for uninsured motorist coverage and a "limits of liability" clause, and they paid insurance premiums equal to twice those charged for a single automobile less a 15 percent discount on the total. Aetna admitted liability of $20,000, but denied the plaintiff's claim for an additional $20,000, and

refused to pay the admitted liability unless Mrs. Fletcher released all claims against it, including her claim that the uninsured motorist coverages on the two vehicles could be "stacked". Mrs. Fletcher brought an action for declaratory judgment and punitive damages against Aetna and Roger D. Ellis, the uninsured motorist. The Genesee Circuit Court, Earl E. Borradaile, J., granted judgment for the defendant, with interest to the plaintiff on Aetna's admitted liability. The Court of Appeals, J. H. Gillis, P.J., and Bashara and Heading, JJ., reversed on the ground that to allow the limitation of liability would be to avoid the statutory obligation of providing uninsured motorist coverage on both of the Fletcher automobiles (Docket No. 29219). Defendant Aetna appeals.

Melvin D. Schigur, while he was walking on May 18, 1975, was struck by a hit-and-run driver who has not been identified. At the time of the accident, Schigur owned a car which was insured by West Bend Mutual Insurance Company for no-fault personal protection coverage and uninsured motorist coverage. West Bend paid him for certain economic losses under the personal protection coverage, but sought to reduce an arbitration award of $20,000, the limit of uninsured motorist coverage, for his non-economic loss by the personal protection benefits it had paid for his economic losses. Schigur brought an action to enforce the arbitration award against West Bend, and the Wayne Circuit Court, Richard D. Dunn, J., granted judgment for the plaintiff. The Court of Appeals, R. M. Maher, P.J., and Borchard, J. (N. J. Kaufman, J., dissenting), reversed in a per curiam opinion on the ground that the defendant is entitled to set off any personal protection benefits paid under the terms of the uninsured motorist coverage of the policy (Docket No. 31545). Plaintiff appeals. In a unanimous opinion by Justice Levin, the Supreme Court *held:*

The legislative policy reflected in the Motor Vehicle Accident Claims Act and the uninsured motorist amendment to the Insurance Code governs the disposition of the questions raised in *Bradley, Hickman, Ellis,* and *Ruesing* concerning the validity of the owned vehicle exclusion and in *Fletcher* concerning the limits of liability clause. An owned vehicle exclusion which denies uninsured motorist coverage to a liability insured when his injuries were sustained in a family-owned vehicle which was not a vehicle for which the endorsement was purchased is violative of the legislative policy. Where premiums have been paid for multiple uninsured motorist endorsements, an injured person may recover under each endorsement in an aggregate amount not greater than the actual loss. *Bradley, Hickman,*

*Ellis, Ruesing* and *Fletcher* arose before the amendment of the Motor Vehicle Accident Claims Act restricting the liability of the fund to accidents occurring before January 2, 1976, and before the repeal of the uninsured motorist amendment to the Insurance Code. *Davidson, Williams* and *Schigur* concern coverage issued and accidents occurring after restriction of the fund's liability and repeal of the amendment. In policies effective on or after October 1, 1973, the date of repeal of the uninsured motorist amendment, "other insurance" clauses which provide that damages shall be deemed not to exceed the policy limits and that the uninsured motorist coverage of the policy shall apply pro rata where there is other similar insurance available are enforceable and benefits under such policies may not be "stacked". It would defeat the reasonable expectations of the insured to permit the insurer to deduct no-fault benefits from the amount otherwise recoverable for non-economic and excess economic loss under uninsured motorist coverage, and the set-off is, to that extent, unenforceable.

1. The Michigan statute required that uninsured motorist coverage be provided unless expressly rejected in writing, without defining the scope of the coverage or permissible exclusions and limitations. Subject to a variety of exclusions and limitations, the standard endorsement provides "family protection" for the insured and family members against loss caused by an uninsured motorist without regard to whether the covered vehicle is involved in the accident. The coverage is "portable": The insured and family members are covered not only when occupying the covered vehicle, but also when in another automobile, and when on foot, on a bicycle or even when sitting on a porch.

2. The legislative purpose in amending the Insurance Code to require uninsured motorist coverage unless rejected in writing when the Motor Vehicle Accident Claims Fund was established in 1965 was to protect the fund by promoting the purchase of uninsured motorist coverage. The thrust of the owned vehicle exclusion is that the owner of an automobile, or a member of his family, occupying the automobile when it is involved in an accident with an uninsured motorist can only recover under an uninsured motorist endorsement specifically covering that vehicle and may not resort to the uninsured motorist coverage of a policy issued for a different family vehicle. Since Bradley, Hickman and Hull (in *Ellis)* were injured while riding their own motorcycles, *i.e.,* a family vehicle, the owned vehicle exclusion of the uninsured motorist endorsements covering

other family vehicles would preclude recovery, although the endorsements would have provided coverage were they injured while riding a bicycle or on foot, or while occupying a vehicle not owned by them or a family member.

3. Typically, family members resident in a household will be included among those insured for liability under an automobile policy. Bradley, Hickman and Hull were persons insured for public liability by the policies under which recovery is sought. The issue is whether they were "persons insured thereunder" within the meaning of the former uninsured motorist amendment to the Insurance Code where they were not then using the vehicle covered by that policy. The legislative objective in enacting the uninsured motorist amendment was that all persons be protected against the negligent uninsured motorist. If insurers can, by contractual limitations on the liability coverage, narrow the scope of their statutory obligation to provide uninsured motorist coverage, it would mean that no one must have "portable" uninsured motorist coverage, which is required by the legislative purpose of protecting persons insured for liability not only when occupying the insured vehicle, but in all other circumstances.

4. The obligation to provide uninsured motorist coverage was tied to liability coverage to facilitate its purchase and to determine the persons who must be provided with uninsured motorist coverage, and not to provide insurers a means of limiting the coverage to situations in which liability coverage would be in effect. The legislative declaration that no policy shall be delivered unless coverage is provided for the protection of "persons insured thereunder" leaves no room for contractual limitations modifying the generality of "insured thereunder" or exclusions based on the circumstances of the accident. The words "persons insured thereunder" refer to persons primarily insured for public liability by the policy and not to the circumstances or times that the public liability coverage is actually operative. The same principles apply whether the injured person is the insured or a relative insured for liability. The status of the named insured and his relatives as persons insured against negligent uninsured motorists is not altered by there being other family vehicles having no uninsured motorist coverage. They acquire that status when coverage is purchased on any household vehicle. Thereafter, they are insured no matter where they are injured. Once uninsured motorist coverage is purchased, the insured and his relatives insured for liability have uninsured motorist protection under all circumstances.

Uninsured motorist coverage, like no-fault coverage, is personal and portable.

5. The owned vehicle endorsement in *Ruesing* precludes recovery because, although an uninsured motorist premium had been paid for the automobile, it was deemed to be an owned vehicle "other than an insured automobile" because it was being driven without permission. Plaintiff Ruesing's son was not insured for liability under the terms of the policy; the primary coverage extended only to the named insured and the plaintiff's son was not using the vehicle with the owner's permission. Since he was not a primary insured, the circumstances of his use could properly affect the scope of the liability coverage and the corresponding mandatory uninsured motorist protection. The conclusion that an owned vehicle exclusion is void as to "persons insured thereunder" does not mean that such a clause is a nullity and cannot be applied to persons not so insured. *Ruesing* does not present a case where statutory coverage is denied, which would require the Court to reform the insurance policy. It appears that the Legislature meant that uninsured motorist coverage must be provided to protect those "persons insured thereunder" when they, themselves, suffer certain injuries and not to protect them when loss is incurred as a result of personal injury sustained by others. Because plaintiff Ruesing's son was not insured for liability under the policy, the limitation on the portability of uninsured motorist coverage as applied to him was not violative of the Insurance Code.

6. The issue in *Fletcher* is whether, when an insured seeks to "stack" coverages on two vehicles insured under the same policy to recover the amount of the actual loss, the insurer may invoke a "limits of liability" clause which has the same effect as an "other insurance" clause which the Court has declared to be invalid. The question is whether intra-policy stacking of coverage is sufficiently different from inter-policy stacking to justify different treatment under the statute. The effect of the "limits of liability" clause is the same as the "other insurance" clause. The insured pays two premiums and secures coverage for two automobiles, but would be permitted to collect under only one coverage. The rationale that the Legislature intended to protect against the negligence of uninsured motorists while maintaining the fiscal integrity of the Motor Vehicle Accident Claims Fund applies, and no distinction can be made on the basis of whether the family-owned automobiles are insured under a single policy or multiple policies. To hold that whether the claimant is entitled to multiple coverage depends on the

question of how many policies were issued would be illogical since the insurance company would merely combine several separate policies issued to the same insured under one policy. The insurer in *Fletcher* insured the two cars and required two separate premiums to be paid. From the insured's point of view, this relationship is the same as having two policies, regardless of how the insurer subsequently handles those premiums for its administrative purposes. It would be unconscionable to permit an insurance company offering statutorily required coverage to collect premiums for it with one hand and allow it to take the coverage away with the other by using a self-devised "other insurance" limitation. An insurer may not collect an uninsured motorist premium for statutorily required uninsured motorist coverage for more than one vehicle but limit its liability to that which would arise if there were only one vehicle and one premium paid. A different result is not justified where the vehicles are insured and the premiums paid under one policy rather than under multiple policies.

7. In *Davidson* the uninsured motorist coverage was issued and the accident occurred after the repeal of the uninsured motorist amendment to the Insurance Code. In policies effective on or after October 1, 1973, the date of repeal of the uninsured motorist amendment, "other insurance" clauses which provide that damages shall be deemed not to exceed the policy limits and that the uninsured motorist coverage of the policy shall apply pro rata where there is other similar insurance available are enforceable and benefits under such policies may not be "stacked". It is unnecessary to decide whether "owned vehicle" exclusions to otherwise portable coverage defeat the reasonable expectations of insureds because if the exclusion were held invalid and the endorsement to the automobile policy construed to provide coverage, Davidson would, under the "other insurance" clause, have other insurance available and be deemed to have suffered damages not in excess of the higher of the limits of liability of the two policies. Both policies provide $20,000 coverage; Davidson collected $20,000 under the endorsement to the motorcycle policy and so would not be entitled to further benefits under the endorsement to the automobile policy. In a policy with an "other insurance" clause, the insurer makes no promise to provide coverage in the stated amounts without regard to the insured's having available from other sources similar insurance benefits or protection. The insurer promises only that the insured will have insurance coverage in the stated policy limits from some source.

8. The no-fault insurance act and the repeal of the uninsured motorist amendment became effective on the same day. This

does not mean, however, that the Legislature repealed the uninsured motorist amendment simply because it believed that there would be no uninsured motorists after the effective date of the no-fault act. Rather, the legislative history is persuasive that the uninsured motorist amendment was repealed because the Legislature concluded that the policy of compensating accident victims no longer demanded that uninsured motorist endorsements provide the coverage required by the Court's previous decisions. The concerns which led to enactment of the uninsured motorist amendment and the Motor Vehicle Accident Claims Act are no longer as pressing because of the provision by the no-fault act of other forms of protection against negligence of an uninsured motorist for all damage except pain and suffering and excess economic loss. The no-fault act, which assures that all persons injured in motor vehicle accidents receive a minimum level of compensation, fulfills the apparent legislative objective for which the uninsured motorist amendment and the Motor Vehicle Accident Claims Act were enacted, to assure that persons injured by negligent uninsured motorists would have some source of recovery. The no-fault benefits may be insufficient to fully compensate one injured by a negligent uninsured motorist; but no accident victim is permitted, under the no-fault act, to recover for below-threshold pain and suffering, and one's ability to recover where a tort action is permitted is largely dependent on the fortuitous circumstances of the tortfeasor's collectibility and insurance coverage. The Legislature apparently saw the substitution of a right to personal protection benefits—unlimited medical expense and work-loss and survivor's loss benefits in amounts and for times limited by law—as an appropriate substitute for whatever additional recoveries might result from continuing mandatory uninsured motorist coverage and the possible $20,000 recovery from the Motor Vehicle Accident Claims Fund. Therefore, there is no legislative policy under the no-fault act requiring a holding that "other insurance" clauses are unenforceable.

9. The Court has previously held that limitations devised by the insurer were unconscionable where the insured had paid for statutorily required coverage and the limitations encroached on the scope and extent of that coverage. The Court did not hold that "other insurance" clauses are unconscionable where the offer, scope and extent of coverage is not mandated by statute. Insurance premiums are not necessarily computed to accurately reflect risk, but, rather, reflect an even apportionment of the cost of uninsured motorist coverage among the

vehicles to which there is uninsured motorist coverage applicable. The insured who pays two premiums for two vehicles does not purchase two coverages; he contributes twice to the total cost of uninsured motorist coverage. He is required to do so because he has chosen to have both vehicles participate in the system. With each premium the insured is promised a certain insurance coverage from some source. Since there is presently no statutory or decisional requirement that the premium charged for voluntarily provided and purchased automobile insurance accurately reflect the risk covered by such insurance, and there is no evidence that the insurer reaps a windfall, it cannot be said that "other insurance" clauses are unconscionable because they limit the coverage applicable to a single accident to that provided by a single policy.

10. The argument that one injured by a negligent uninsured motorist expects to have recourse to more than one policy is not persuasive. There is nothing in the nature of uninsured motorist coverage to make expectations of duplicate coverage more likely or reasonable than they would have been for liability insurance. Further, whatever expectations in relation to insurance coverage existed before no-fault insurance, it cannot be said that those expectations could reasonably survive its effective date. The no-fault act changed the obligations and liabilities of insurers and drivers. Uninsured motorist coverage is now a substitute for residual liability insurance and is no longer the primary means of recovery for one injured by an uninsured motorist. Any argument that insureds developed expectations that "stacking" of coverages would be permitted, because the previous law permitted such "stacking", must also account for the rationale of those cases, which were based upon the former statutes and could therefore not engender reasonable expectations that the Court would invalidate similar insurance clauses in the absence of such legislative provisions.

11. In *Williams* and *Schigur* the plaintiffs purchased the standard no-fault policy and also paid an additional premium for uninsured motorist coverage. The insurers, relying on a set-off clause in the policies, deducted the amount of no-fault personal protection benefits paid from the $20,000 arbitration awards under the uninsured motorist endorsement. The set-off clause, whether regarded as ambiguous or inconsistent with the reasonable expectations of the insured, cannot be enforced in the manner the insurers seek. A purpose of the no-fault act is to provide a contractual right of action against one's own insurer for wage loss and medical expenses arising from a motor vehicle accident. A tort action for non-economic and

excess economic loss was preserved in cases of severe loss. The Legislature has thus divided an injured person's loss into two categories—loss for which the first-party no-fault insurer is liable and loss for which the tortfeasor is liable. No-fault insurance provides security for the first type; uninsured motorist coverage, which presupposes that the insured is entitled to recovery under the tort system, provides security for the second type—it is offered to protect against being left with a worthless claim against an uninsured motorist. One who has purchased uninsured motorist coverage would not expect to collect twice for the same economic loss and the insurer prevents this from happening through the set-off clause. But neither would he expect to have such coverage reduced or eliminated altogether because of other coverage he has purchased. He would expect, even in the face of the set-off clause, that amounts paid by the insurer for economic loss would not reduce the amount payable for non-economic or excess economic loss. In providing insurance against the uninsured motorist, the insurer promises the insured that his right of action for greater than threshold injuries will not be worthless if the tortfeasor turns out to be uninsured. If the tortfeasor is insured or otherwise collectible, the insurer paying no-fault benefits has a statutory right to reimbursement for benefits paid only out of a recovery for economic loss. So, too, if the insurer contracts to make good for an uninsured motorist—coverage complementary and supplementary to the basic no-fault policy—the insurer and the insured should have corresponding rights relative to amounts recoverable under an uninsured motorist endorsement. The insured is entitled to payment under the uninsured motorist endorsement for all economic and above-the-threshold non-economic loss for which an uninsured motorist would be liable. Pursuant to the set-off clause, that total amount is reduced by the amount of no-fault benefits paid, and the remainder, not exceeding the limits of the endorsement, is the obligation of the insurer to the insured.

12. Unless voluntarily purchased uninsured motorist coverage provides meaningful protection for severe above-threshold injuries without regard to what the insurer is required to pay under the mandatory no-fault coverage, it serves no apparent purpose in the context of a no-fault statute mandating the payment of benefits. If the set-off were enforced in the manner the insurers seek, no-fault benefits paid would reduce uninsured motorist coverage dollar for dollar. As soon as the insurer has paid out $20,000 in no-fault benefits, there would be no recovery whatsoever under the uninsured motorist endorse-

ment. The insured could be entitled to collect substantial non-economic damages from the uninsured motorist but would, by reason of the set-off, receive nothing from the insurer. If the set-off of no-fault benefits were to be enforced in the manner the insurers seek, it would mean that the uninsured motorist endorsement, designed to secure recovery from an uninsured motorist, would provide no recovery in those cases where the injuries are most severe because the severity of the injuries maximized the no-fault benefits for work loss or medical expenses. The insureds in *Williams* and *Schigur* paid premiums in exchange for coverage above and beyond that afforded under the no-fault act; the premium was not paid with the expectation that coverage would be afforded only in cases where no-fault benefits are paid in amounts substantially less than the limits of uninsured motorist coverage but non-economic loss is so severe as to entitle the insured to collect from the uninsured tortfeasor. A contrary holding would tend to make the coverage illusory, and defeat the reasonable expectations of insureds and the policy of the no-fault act to distinguish between economic and non-economic loss.

The judgments of the Court of Appeals are affirmed as to *Bradley, Hickman, Ellis, Ruesing, Davidson,* and *Fletcher,* and are reversed as to *Williams* and *Schigur.*

78 Mich App 67; 259 NW2d 378 (1977) affirmed.

78 Mich App 1; 259 NW2d 367 (1977) affirmed.

78 Mich App 189; 259 NW2d 421 (1977) affirmed.

80 Mich App 125; 263 NW2d 311 (1977) reversed.

80 Mich App 439; 264 NW2d 19 (1978) affirmed.

80 Mich App 640; 264 NW2d 83 (1978) reversed.

1. INSURANCE — AUTOMOBILES — UNINSURED MOTORISTS — MOTOR VEHICLE ACCIDENT CLAIMS FUND — LEGISLATIVE PURPOSE.

The legislative purpose in establishing the Motor Vehicle Accident Claims Fund, which is liable only when damages caused by an uninsured motorist exceed amounts payable by an insurer, and amending the Insurance Code to provide that no automobile liability policy could be issued without uninsured motorist coverage "for the protection of persons insured thereunder", unless it was rejected, was to protect the Motor Vehicle Accident Claims Fund by promoting the purchase of uninsured motorist coverage (1965 PA 388; 1965 PA 389).

2. INSURANCE — AUTOMOBILES — UNINSURED MOTORISTS.

The former provision of the Insurance Code which required that no policy for motor vehicle liability be delivered unless it

provided uninsured motorist coverage, where it was not rejected by the insured, was plain, unambiguous and mandatory; every policy must have this coverage (1965 PA 388).

3. INSURANCE — AUTOMOBILES — UNINSURED MOTORISTS — CONSTRUCTION OF POLICY.

Uninsured motorist coverage for the protection of persons insured under an automobile liability policy must be read into the provisions of a policy that differ or vary from the former statutory language which required such coverage (1965 PA 388).

4. INSURANCE — AUTOMOBILES — UNINSURED MOTORISTS — DAMAGES — "OTHER INSURANCE" EXCLUSION.

An insurer could not avoid the former statutory obligation of providing uninsured motorist coverage by a clause in the automobile liability policy that the amount payable under the uninsured motorist endorsement would be reduced by the amount of other similar insurance available to the insured on account of the same accident, and an insured could "stack" recoveries under automobile liability insurance policies until his judicially determined loss had been satisfied (1965 PA 388).

5. INSURANCE — AUTOMOBILES — UNINSURED MOTORISTS — "OWNED VEHICLE" EXCLUSION.

The "owned vehicle" exclusion of an uninsured motorist endorsement in an automobile liability insurance policy violated the Insurance Code as an attempt to avoid the former statutory obligation of providing uninsured motorist coverage; a former provision of the Insurance Code commanded uninsured motorist coverage and such coverage was not limited to an injury suffered by the insured while occupying the owned automobile (1965 PA 388).

6. INSURANCE — AUTOMOBILES — UNINSURED MOTORISTS — CONSTRUCTION OF POLICY.

The uninsured motorist endorsement of an automobile liability policy could be no less broad than the liability coverage in covering "persons insured thereunder" because the former statute required that all persons insured for liability be protected by the uninsured motorist endorsement; the legislative policy expressed in the statute, to reduce claims against the Motor Vehicle Accident Claims Fund, is not affected by circumstances peculiar to a particular plaintiff, and where a policy of liability insurance does not offer statutorily required uninsured

motorist coverage, conforming language must be read into the terms of the policy (1965 PA 388).

7. INSURANCE — AUTOMOBILES — UNINSURED MOTORISTS — LEGISLA-TIVE PURPOSE.

The legislative objective of the former statute which mandated uninsured motorist coverage, unless rejected, for all persons purchasing automobile liability insurance was that all persons be protected against the negligent uninsured motorist; because the insurance industry had generally treated insured persons and their relatives living in the same household as a unit, they would all be covered by such uninsured motorist endorsements, and the Motor Vehicle Accident Claims Fund would provide protection to those not so covered (1965 PA 388; 1965 PA 389).

8. INSURANCE — AUTOMOBILES — UNINSURED MOTORISTS — LEGISLA-TIVE PURPOSE — "PORTABLE" COVERAGE.

The legislative purpose of protecting the Motor Vehicle Accident Claims Fund by encouraging the purchase of uninsured motorist coverage requires that the coverage be "portable" so that it protects persons insured for liability not only when occupying the insured vehicle, but in all other circumstances; the obligation to provide uninsured motorist coverage was tied to liability coverage to facilitate its purchase and to determine the persons who must be provided with uninsured motorist coverage, not to provide insurers a means of limiting it to situations in which liability coverage would be in effect (1965 PA 388).

9. INSURANCE — AUTOMOBILES — UNINSURED MOTORISTS — EXCLU-SIONS.

The former legislative declaration that no policy of automobile liability insurance shall be delivered unless uninsured motorist coverage is provided for the protection of "persons insured thereunder" leaves no room for contractual limitations modifying the generality of "insured thereunder" or exclusions based on the circumstances of the accident (1965 PA 388).

10. INSURANCE — AUTOMOBILES — UNINSURED MOTORISTS — "PORTA-BLE" COVERAGE — PERSONS INSURED — WORDS AND PHRASES.

The words "persons insured thereunder", in the former provision of the Insurance Code requiring an offer of uninsured motorist coverage, referred to persons primarily insured for public liability by the insurance policy and not to the circumstances or times that the public liability coverage was actually operative; the same principles applied whether the injured person was the insured or a relative insured for liability because the statute

contemplated that all such persons would have fully "portable" coverage (1965 PA 388).

11. INSURANCE — AUTOMOBILES — UNINSURED MOTORISTS — "OWNED VEHICLE" EXCLUSION.

It would not be consistent with the legislative goal of protecting the Motor Vehicle Accident Claims Fund to exclude from the "portability" of uninsured motorist coverage under automobile liability insurance policies injuries incurred in a family vehicle to which the endorsement does not specifically apply; the only vehicle covered is the one named in the insurance policy so that unrelated third parties are covered only in that vehicle, but the status of the named insured and his relatives as persons insured against negligent uninsured motorists is not altered by there being other family vehicles having no uninsured motorist coverage because they acquire that insured status when liability coverage is purchased for any household vehicle, and thereafter they are insured no matter where they are injured (1965 PA 388).

12. INSURANCE — AUTOMOBILES — UNINSURED MOTORISTS.

A former provision of the Insurance Code required that, once a plaintiff has been afforded the status of an "insured" under the liability provision of an automobile insurance policy, an offer of uninsured motorist insurance must be extended for protection from injuries caused by uninsured motorists wherever the insured happened to be and whatever the insured happened to be doing at the time of the injury (1965 PA 388).

13. INSURANCE — AUTOMOBILES — UNINSURED MOTORISTS — "OWNED VEHICLE" EXCLUSION.

A contractual limitation on uninsured motorist coverage in an automobile liability insurance policy by an "owned vehicle" exclusion as applied to a son of an insured person does not violate the former uninsured motorist provisions of the Insurance Code where the son took the insured's automobile without permission, making it a vehicle "other" than the one insured under the terms of the policy, and was injured in it by an uninsured friend's negligence, because the son was not insured for liability under the terms of the policy which extended primary liability coverage only to the named insured; since the son was not a primary insured unless, under a separate provision, he was using the vehicle with the owner's permission, the circumstances of his use could properly affect the scope of the liability coverage and the corresponding mandatory uninsured motorist protection (1965 PA 388).

14. INSURANCE — AUTOMOBILES — UNINSURED MOTORISTS — RELA-
TIVES OF INSURED.

The Legislature did not intend to mandate automobile insurance
coverage in all cases where a person insured for liability has a
relative whose death was caused by a negligent uninsured
motorist and whose property, had he died intestate, would
devolve in any part upon the insured, although the relative did
not reside in the household of the insured; instead, the Legisla-
ture meant that uninsured motorist coverage must be provided
by an insurance policy to protect those "persons insured there-
under" from loss when they, themselves, suffer certain injuries
and not to protect them when loss is incurred as a result of
personal injury sustained by others (1965 PA 388).

15. INSURANCE — AUTOMOBILES — UNINSURED MOTORISTS — LIMITS
OF LIABILITY.

The effect of a "limits of liability" clause, which seeks to prohibit
the "stacking" of coverages on two vehicles insured for unin-
sured motorist coverage, is the same as an "other insurance"
clause, which seeks to prohibit the "stacking" of coverages
under different policies, because the insured in each case pays
two premiums, secures liability insurance coverage required
under the former statute for two automobiles, but would be
permitted to collect under only one coverage; therefore, intra-
policy stacking does not sufficiently differ from inter-policy
stacking to justify different treatment under the former re-
quirement of the Insurance Code for uninsured motorist cover-
age in an automobile liability insurance policy (1965 PA 388).

16. INSURANCE — AUTOMOBILES — UNINSURED MOTORISTS — LIMITS
OF LIABILITY.

It would be unconscionable to permit an insurance company
offering statutorily required uninsured motorist coverage to
collect premiums for it and take the coverage away by using a
limits of liability clause in the policy (1965 PA 388).

17. INSURANCE — AUTOMOBILES — UNINSURED MOTORISTS — LIMITS
OF LIABILITY.

An insurer may not collect an uninsured motorist premium for
statutorily required uninsured motorist coverage for more than
one vehicle and yet limit its liability to that which would arise
if there were only one vehicle and one premium paid; a differ-
ent result is not justified where the vehicles are insured and
the premiums paid under one policy rather than under multi-
ple policies (1965 PA 388).

18. INSURANCE — NO-FAULT INSURANCE — UNINSURED MOTORISTS —
    "OTHER INSURANCE" EXCLUSION — POLICY LIMITS.

"Other insurance" clauses which provide that damages shall be
deemed not to exceed the limits of a voluntarily purchased
uninsured motorist endorsement in a no-fault insurance policy
effective on or after October 1, 1973, and that the uninsured
motorist coverage of the policy shall apply pro rata where there
is other similar insurance available are enforceable and bene-
fits under such policies may not be "stacked" (MCL 500.3101 *et
seq.;* MSA 24.13101 *et seq.).*

19. INSURANCE — NO-FAULT INSURANCE — PUBLIC POLICY.

The public policy of Michigan continues to be that persons who
suffer loss due to automobile accidents have a source and
means of recovery under the no-fault insurance act; however,
that public policy is not so strong as to require judicial invali-
dation of otherwise enforceable insurance contract terms limit-
ing voluntarily purchased uninsured motorist coverage because,
under the no-fault act, victims of uninsured motorists have
substantial insurance compensation without regard to whether
there is uninsured motorist coverage (MCL 500.3101 *et seq.;*
MSA 24.13101 *et seq.).*

20. INSURANCE — NO-FAULT INSURANCE — UNINSURED MOTORISTS —
    "OTHER INSURANCE" EXCLUSION — UNCONSCIONABILITY.

The premium paid for an uninsured motorist endorsement to a
no-fault insurance policy has no relation to the risk that the
insured, or a family member, will be involved in an accident
with an uninsured motorist, but it is a standardized charge for
participation in the uninsured motorist coverage system; where
there is no legal requirement that the premium charged for
voluntarily provided and purchased automobile insurance accu-
rately reflect the risk covered by such insurance, and there is
no evidence that the insurer reaps a windfall, it cannot be said
that "other insurance" clauses are unconscionable because they
limit the coverage applicable to a single accident to that
provided by a single policy (MCL 500.3101 *et seq.;* MSA
24.13101 *et seq.).*

21. INSURANCE — NO-FAULT INSURANCE — UNINSURED MOTORISTS —
    "OTHER INSURANCE" EXCLUSION — EXPECTATIONS OF INSURED.

There is nothing in the nature of voluntarily purchased unin-
sured motorist coverage to make an insured's *expectation* of
duplicate coverage more likely or reasonable under the no-fault
insurance system; whatever expectations in relation to insur-

ance coverage existed before the no-fault system was enacted, it cannot be said that those expectations could reasonably survive its effective date because the no-fault act changed the obligations and liabilities of insurers and drivers, and uninsured motorist coverage is now a substitute for residual liability insurance, rather than the primary means of recovery for one injured by an uninsured motorist (MCL 500.3101 *et seq.;* MSA 24.13101 *et seq.).*

22. INSURANCE — NO-FAULT INSURANCE — NEGLIGENCE.

A purpose of the no-fault insurance act is to provide a contractual right of action against one's own insurer for wage loss and medical expenses arising from a motor vehicle accident, but a tort action for non-economic loss and excess economic loss is preserved in cases of severe loss (MCL 500.3101 *et seq.;* MSA 24.13101 *et seq.).*

23. INSURANCE — NO-FAULT INSURANCE — NEGLIGENCE — UNINSURED MOTORISTS.

The Legislature in enacting the no-fault insurance act has divided an injured person's loss into two categories, loss for which the first-party no-fault insurer is liable and loss beyond a certain threshold for which the tortfeasor is liable; no-fault insurance provides security for the first type, and uninsured motorist coverage, which presupposes that the insured is entitled to recovery under the tort system, provides security for the second type by protecting the insured from being left with a worthless claim against an uninsured motorist (MCL 500.3101 *et seq.;* MSA 24.13101 *et seq.).*

24. INSURANCE — NO-FAULT INSURANCE — UNINSURED MOTORISTS — SET-OFF.

It would defeat the reasonable expectations of the insured to permit the insurer to deduct no-fault benefits previously paid from the amount otherwise recoverable for non-economic and excess economic loss under uninsured motorist coverage, and a no-fault insurance policy which provides for such a set-off is, to that extent, unenforceable; unless voluntarily purchased uninsured motorist coverage provides meaningful protection for severe above-threshold injuries without regard to what the insurer is required to pay under the mandatory no-fault coverage, it serves no apparent purpose in the context of a no-fault insurance statute mandating the payment of benefits because such a set-off would provide no recovery in those cases where the injuries are most severe (MCL 500.3101 *et seq.;* MSA 24.13101 *et seq.).*

25. Insurance — No-Fault Insurance — Legislative Purpose.
   One purpose of the no-fault insurance act is to provide greater
   insurance protection for the more seriously injured accident
   victims while eliminating over-payments to less seriously in-
   jured claimants (MCL 500.3101 *et seq.*; MSA 24.13101 *et seq.*).

*Wisti & Jaaskelainen* (by *Michael E. Makinen)* for plaintiffs Ruesing.

*Draugelis, Ashton & Scully* for plaintiff State Farm Insurance Company.

*Blum & Sternberg* for plaintiff American Fidelity Fire Insurance Company.

*Newblatt & Grossman, P.C.* (by *Howard R. Grossman* and *David Melkus),* for plaintiff Fletcher.

*Moore, Barr & Kerwin* for plaintiff Schigur.

*Hoffmann, O'Neill, Wallace, Doyle & Jones* for defendant Mid-Century Insurance Company.

*Milliken & Magee* for defendant Citizens Insurance Company.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Joseph B. Bilitzke* and *Regina Ann King,* Assistants Attorney General, for intervening defendant Secretary of State.

*Gault, Davison, Bowers & Hill* for defendant Community Service Insurance Company.

*Kelly, Kelly & Kelly* for defendant State Farm Insurance Company.

*Butch, Quinn, Rosemurgy & Jardis, P.C.,* for

defendant Aetna Casualty & Surety Company in *Ruesing.*

*Rifkin, Kingsley & Rhodes, P.C.* (by *Kent D. Schultz,* of counsel), for defendant Davidson.

*Bain & Shapero, P.C.* (by *Bryan H. Levy),* for defendants Williams and Gilmer.

*Cline, Cline & Griffin* for defendant Aetna Casualty & Surety Company in *Fletcher.*

*Morbach, Cheatham & MacArthur* for defendant West Bend Mutual Insurance Company.

LEVIN, J. These cases concern contractual limitations on the coverage provided by uninsured motorist endorsements to automobile insurance policies:

i) the "owned vehicle exclusion"[1] which denies coverage under an uninsured motorist endorsement when the insured or relatives in his household are injured while occupying a motor vehicle owned by any of them if it is not the vehicle to which the uninsured motorist endorsement specifically applies;

ii) "limits of liability"[2] and "other insurance"[3] clauses which prevent recovery beyond the limits of a single uninsured motorist endorsement notwithstanding that the injured person is insured under multiple uninsured motorist endorsements or a single endorsement covering more than one vehicle;

iii) a set-off clause[4] requiring deduction of no-

---

[1] See fn 15.

[2] See fn 42.

[3] See fn 16.

[4] See p 60, *post.*

fault benefits paid or payable from amounts otherwise payable under an uninsured motorist endorsement.

In *Blakeslee v Farm Bureau Mutual Ins Co of Michigan* [5] and *Boettner v State Farm Mutual Ins Co* [6] this Court allowed recovery notwithstanding contractual limitations on uninsured motorist coverage. Those decisions were based on the Court's perception of the legislative policy reflected in the Motor Vehicle Accident Claims Act[7] and the uninsured motorist amendment to the Insurance Code.[8]

We conclude that the rationale of those decisions governs the disposition of the questions raised in *Bradley, Hickman, Ellis* and *Ruesing* concerning the validity of the owned vehicle exclusion and in *Fletcher* concerning the limits of liability clause:

i) An owned vehicle exclusion which denies uninsured motorist coverage to a liability insured when his injuries are sustained in a family-owned vehicle which is not a vehicle for which the endorsement was purchased is violative of the legislative policy.

ii) Where premiums have been paid for multiple statutorily mandated uninsured motorist endorsements, an injured person may stack benefits and recover under each endorsement in an aggregate amount not greater than the actual loss.

*Bradley, Hickman, Ellis, Ruesing* and *Fletcher* arose before the amendments of the Motor Vehicle Accident Claims Act restricting the liability of the fund established under that act to persons not owning a motor vehicle for which security must be

---

[5] *Blakeslee v Farm Bureau Mutual Ins Co of Michigan,* 388 Mich 464; 201 NW2d 786 (1972).

[6] *Boettner v State Farm Mutual Ins Co,* 388 Mich 482; 201 NW2d 795 (1972).

[7] MCL 257.1101 *et seq.;* MSA 9.2801 *et seq.*

[8] MCL 500.3010; MSA 24.13010. See fn 20, *infra,* for text.

maintained under the no-fault act[9] and to accidents occurring before January 2, 1976[10] and the repeal of the uninsured motorist amendment to the Insurance Code.[11] *Davidson, Williams* and *Schigur* concern coverage issued and accidents occurring after restriction of the fund's liability and repeal of the amendment.

We conclude that in policies effective on or after October 1, 1973, the date of repeal of the uninsured motorist amendment, "other insurance" clauses which provide that damages shall be deemed not to exceed the policy limits and that the uninsured motorist coverage of the policy shall apply pro rata where there is other similar insurance available are enforceable and benefits under such policies may not be stacked.

We further conclude in *Williams* and *Schigur* that it would defeat the reasonable expectations of the insured to permit the insurer to deduct no-fault benefits from the amount otherwise recoverable for non-economic and excess economic loss under uninsured motorist coverage, and that the set-off is, to that extent, unenforceable.

I

The uninsured motorist endorsement was developed and the policy language defining its scope was drafted in the 1950's by the insurance industry and have become fairly standard.[12] By 1968, legislation in 46 states required that uninsured motorist coverage be offered with all automobile

---

[9] 1974 PA 223; MCL 257.1105; MSA 9.2805.

[10] 1975 PA 322; MCL 257.1133; MSA 9.2833.

[11] 1972 PA 345.

[12] See Widiss, A Guide to Uninsured Motorist Coverage (Cincinnati: W H Anderson Co, 1969), Appendix A, Standard Uninsured Motorist Endorsements, pp 291 *et seq.*

liability insurance policies issued within the state.[13] Most of the statutes, including Michigan's, contain similar or identical language, requiring that the coverage be provided unless expressly rejected in writing, without defining the scope of the coverage or permissible exclusions and limitations.

Subject to a variety of exclusions and limitations, the standard endorsement provides "family protection" for the insured and family members against loss caused by an uninsured motorist without regard to whether the covered vehicle is involved in the accident. The coverage is portable: The insured and family members are covered not only when occupying the covered vehicle, but also when in another automobile, and when on foot, on a bicycle or even sitting on a porch.

The exclusions and limitations of the standard endorsement have been the subject of much litigation and comment.[14] The two most often encountered, the "owned vehicle" exclusion[15] and "other

---

[13] See Widiss, *supra,* § 1.11, p 15.

[14] See, *e.g.,* Mehling, Note, *Contractual Attempts to Limit Liability Under Uninsured Motorist Coverage,* 47 Cincinnati U L Rev 245 (1978); Davis, *Uninsured Motorist Coverage: Some Significant Problems and Developments,* 42 Mo L Rev 1 (1977); Plevin, *Set-Off Under Uninsured Motorist's Coverage,* 20 Cleveland St L Rev 10 (1971); York, Comment, *"Stacking" Uninsured Motorist Protection, Medical Payments, and Personal Injury Protection Coverages in Texas,* 7 St Mary's L J 837 (1976); Chvatal, *Uninsured Motorist Coverage: Validity of Medical Payments Set-off and "Other Insurance" Provisions,* 26 Federation of Insurance Counsel Quarterly 287 (1976).

[15] "This insurance does not apply [under uninsured motorist coverage]:

\* \* \*

"(b) to bodily injury to an insured while occupying a highway vehicle (other than an insured highway vehicle) owned by the named insured, any designated insured or any relative resident in the same household as the named or designated insured, or through being struck by such a vehicle \* \* \*." Widiss, *supra,* 1966 Standard Uninsured Motorist Endorsements, p 292.

Insured automobile is defined as:

" '[I]nsured highway vehicle' means a highway vehicle:

insurance" clause,[16] have been dealt with by courts across the country and held invalid by a clear majority as contrary to the public policy of the uninsured motorist statutes.[17]

---

"(a) described in the schedule as an insured highway vehicle to which the bodily injury liability coverage of the policy applies;

\* \* \*

"(c) while being operated by the named or designated insured or by the spouse of either if a resident of the same household; but the term 'insured highway vehicle' shall not include:

\* \* \*

"(iii) under subparagraphs (b) and (c) above, a vehicle owned by the named insured, any designated insured or any resident of the same household as the named or designated insured; or

"(iv) under subparagraphs (b) and (c) above, a vehicle furnished for the regular use of the named insured or any resident of the same household." *Id.,* pp 294-295.

[16] "With respect to bodily injury to an insured while occupying a highway vehicle not owned by the named insured, this insurance shall apply only as excess insurance over any other similar insurance available to such insured and applicable to such vehicle as primary insurance, and this insurance shall then apply only in the amount by which the limit of liability for this coverage exceeds the applicable limit of liability of such other insurance.

"Except as provided in the foregoing paragraph, if the insured has other similar insurance available to him and applicable to the accident, the damages shall be deemed not to exceed the higher of the applicable limits of liability of this insurance and such other insurance, and the company shall not be liable for a greater proportion of any loss to which this coverage applies than the limit of liability hereunder bears to the sum of the applicable limits of liability of this insurance and such other insurance." *Id.,* pp 296-297.

[17] Holding owned vehicle exclusion invalid: *State Farm Mutual Automobile Ins Co v Hinkel,* 87 Nev 478; 488 P2d 1151 (1971); *Mullis v State Farm Mutual Automobile Ins Co,* 252 So 2d 229 (Fla, 1971); *Touchette v Northwestern Mutual Ins Co,* 80 Wash 2d 327; 494 P2d 479 (1972); *State Farm Mutual Automobile Ins Co v Reaves,* 292 Ala 218; 292 So 2d 95 (1974); *State Farm Mutual Automobile Ins Co v Robertson,* 156 Ind App 149; 295 NE2d 626 (1973); *Doxtater v State Farm Mutual Automobile Ins Co,* 8 Ill App 3d 547; 290 NE2d 284 (1972); *Vantine v Aetna Casualty & Surety Co,* 335 F Supp 1296 (ND Ind, 1971); *Elledge v Warren,* 263 So 2d 912 (La App, 1972).

Similarly, see *Hogan v Home Ins Co,* 260 SC 157; 194 SE2d 89C (1973); *Aetna Casualty & Surety Co v Hurst,* 2 Cal App 3d 1067; 83 Cal Rptr 156 (1969); *Allstate Ins Co v Meeks,* 207 Va 897; 153 SE2d 222 (1967).

Holding "other insurance" clause invalid: *Safeco Ins Co of America v Jones,* 286 Ala 606; 243 So 2d 736 (1970); *Kackman v Continentai*

This Court invalidated an other insurance limitation in *Blakeslee,* an owned vehicle exclusion in *Boettner,* and in *Pappas v Central National Ins Group of Omaha,*[18] a limitation denying recovery to a non-family member who was using the covered vehicle.

### A

In 1965 the Legislature established the Motor Vehicle Accident Claims Fund, liable only when the damages caused by an uninsured motorist exceeded amounts payable by an insurer,[19] and

*Ins Co,* 319 F Supp 540 (D Alas, 1970); *Sellers v United States Fidelity & Guaranty Co,* 185 So 2d 689 (Fla, 1966); *State Farm Mutual Automobile Ins Co v Murphy,* 226 Ga 710; 177 SE2d 257 (1970); *Simpson v State Farm Mutual Automobile Ins Co,* 318 F Supp 1152 (SD Ind, 1970); *Patton v Safeco Ins Co of America,* 148 Ind App 548; 267 NE2d 859 (1971); *Sturdy v Allied Mutual Ins Co,* 203 Kans 783; 457 P2d 34 (1969); *Meridian Mutual Ins Co v Siddons,* 451 SW2d 831 (Ky, 1970); *Johnson v Travelers Indemnity Co,* 359 Mass 525; 269 NE2d 700 (1971); *Harthcock v State Farm Mutual Automobile Ins Co,* 248 So 2d 456 (Miss, 1971); *Gordon v Maupin,* 469 SW2d 848 (Mo App, 1971); *Protective Fire & Casualty Co v Woten,* 186 Neb 212; 181 NW2d 835 (1970); *United Services Automobile Ass'n v Dokter,* 86 Nev 917; 478 P2d 583 (1970); *American Mutual Ins Co v Romero,* 428 F2d 870 (CA 10, 1970); *Turner v Nationwide Mutual Ins Co,* 11 NC App 699; 182 SE2d 6 (1971); *Curran v State Automobile Mutual Ins Co,* 25 Ohio St 2d 33; 266 NE2d 566 (1971); *Markham v State Farm Mutual Automobile Ins Co,* 326 F Supp 39 (WD Okla, 1971); *Smith v Pacific Automobile Ins Co,* 240 Or 167; 400 P2d 512 (1965); *Harleysville Mutual Casualty Co v Blumling,* 429 Pa 389; 241 A2d 112 (1968); *Bryant v State Farm Mutual Automobile Ins Co,* 205 Va 897; 140 SE2d 817 (1965); *State Farm Mutual Automobile Ins Co v United Services Automobile Ass'n,* 211 Va 133; 176 SE2d 327 (1970).

[18] *Pappas v Central National Ins Group of Omaha,* 400 Mich 475; 255 NW2d 629 (1977).

[19] "(2) No payment shall be made out of the fund in respect to a claim or judgment for damages or in respect to a judgment against the secretary, of any amount paid or payable by an insurer by reason of the existence of a policy of insurance or of any amount paid or payable by any other person by reason of the existence of any policy, contract, agreement or arrangement, providing for the payment of compensation, indemnity or other benefits.

"(3) No amount sought to be paid out of the fund shall be sought in lieu of making a claim or receiving a payment that is payable by reason of the existence of a policy of insurance, or in lieu of making a

amended the Insurance Code to provide that no automobile liability policy could be issued without uninsured motorist coverage "for the protection of persons insured thereunder," unless such coverage was rejected.[20] In *Blakeslee* and *Boettner* this Court read the enactments together and concluded that the legislative purpose in amending the Insurance Code was to protect the accident claims fund by promoting the purchase of uninsured motorist coverage. That perception of the legislative purpose also underlies the rationale of *Pappas.*

In *Blakeslee* the decedent was a guest passenger. His estate collected under the driver's uninsured motorist endorsement and also sought to collect under the endorsement to the decedent's own automobile liability policy. This Court held that a clause providing that the amount payable under the uninsured motorist endorsement would be reduced by the amount of other similar insurance

claim or receiving a payment that is payable by reason of the existence of any policy, contract, agreement or arrangement, providing for the payment of compensation, indemnity or other benefits, to which the claimant would be entitled in the absence of this act." MCL 257.1122; MSA 9.2822.

"Where any amount is recovered from any other source in partial discharge of the claim or judgment, or where a claim or judgment for damages is reduced by an amount paid or payable by an insurer or any other person, as provided in [subsections (2) or (3) of section 22] of this act, then the limitations set forth in subsection 1 of this section shall be applicable to the excess of the claim or judgment over the amount by which the claim or judgment is partially satisfied or is reduced under [subsections (2) or (3) of section 22]. Any amount paid out of the fund in excess of the amount authorized by this section may be recovered by action brought by the secretary." MCL 257.1123(2); MSA 9.2823(2).

[20] "No automobile liability or motor vehicle liability policy * * * shall be delivered or issued for delivery in this state * * * unless coverage is provided therein or supplemental thereto * * * for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles, including owners or operators insured by an insolvent insurer, because of bodily injury, sickness or disease, including death, resulting therefrom, unless the named insured rejects such coverage in writing as provided herein." MCL 500.3010; MSA 24.13010.

available to the insured on account of the same accident was violative of the uninsured motorist amendment:

"The language of the statute is plain, unambiguous and *mandatory*.

"It unequivocally requires that '[n]o * * * policy * * * be delivered * * * unless [uninsured motorist] coverage is provided therein.' Stated in the affirmative, *every* policy *must have* this coverage.

* * *

"Given this clear purpose [to reduce claims against the fund] and the mandatory language of the statute, such language must be read into those provisions of a policy of insurance that differ or vary from the statutory language.

* * *

"[T]he insured may pyramid recovery until his judicially determined loss has been satisfied." (Emphasis in original.)[21]

In *Boettner* a couple owned two automobiles covered by separate policies with uninsured motorist endorsements, each containing "other insurance" and "owned vehicle" exclusion clauses. This Court permitted their estates to recover under both policies, holding the other insurance clause inapplicable and, following the *Blakeslee* rationale, voiding the owned vehicle exclusion:

"Should the *Blakeslee* rationale be extended to void 'exclusions' clauses also? We hold the answer is yes.

"The purpose of the 'other insurance' clause and the 'exclusions' clause is the same. That is the clauses are an attempted means to avoid the statutory obligation of providing uninsured motorist coverage. * * * The statute commands coverage for all motor vehicles and *such*

---

[21] *Blakeslee v Farm Bureau Mutual Ins Co of Michigan, supra,* pp 473-475.

*coverage is not limited to an injury suffered by the insured while occupying that motor vehicle.*" (Emphasis supplied.)[22]

In *Pappas* the plaintiff was a guest passenger on a motorcycle. The uninsured motorist endorsement covered the owner and his family but not other riders. Under the public liability portion of the policy, however, persons "using" the motorcycle were covered. This Court read the liability provision of the policy as applying to the guest passenger as a "user", declared that she was "insured thereunder" within the meaning of the uninsured motorist amendment, and held that the uninsured motorist endorsement could be no less broad than the liability coverage because the statute requires that all persons insured for liability be protected by the uninsured motorist endorsement:

"Central [the insurer] contends that the Legislature expressed an intention to allow the insurer and the insured freedom to define contractually the class of persons to whom protection would be extended under the uninsured motorist clause of an automobile liability policy issued in this state.

"We disagree.

\* \* \*

"The principal purpose of [the amendment to the Insurance Code] was to reduce claims against the Motor Vehicle Accident Claims Fund. Central's contention that the Legislature intended that the insurer and the insured should have the ability to narrowly define the class of persons protected is inconsistent with that purpose, as well as with the plain meaning of the statute. Central's argument that a decision in its favor will not defeat the Legislature's intent because Pappas may recover against another insurer misses the mark. The legislative policy expressed in the statute is not

---

[22] *Boettner v State Farm Mutual Ins Co, supra,* pp 487-488.

affected by circumstances peculiar to the situation of a particular plaintiff.

\* \* \*

"Where a policy of insurance does not offer statutorily required uninsured motorist coverage, conforming language must be read into the terms of the policy."[23]

## B. *Bradley, Hickman* and *Ellis*

We agree with the Court of Appeals in *Bradley*,[24] *Hickman*,[25] and *Ellis*[26] that *Blakeslee* and *Boettner* are controlling and that the owned vehicle exclusion is unenforceable.

Bradley was injured while riding a motorcycle covered by an uninsured motorist endorsement; he collected from his insurer. He also owned an automobile insured by Mid-Century under a policy with an uninsured motorist endorsement, and resided with his father who owned a vehicle insured by Citizens, also under a policy with an uninsured motorist endorsement. He seeks recovery under both endorsements. His damages exceed the combined policy limits.

Hickman was injured while riding his motorcycle which had no uninsured motorist coverage. He sought to recover under the uninsured motorist endorsement to his wife's automobile liability policy.

Craig Hull died as a result of injuries sustained while riding his motorcycle which had no uninsured motorist coverage. He lived with his stepfa-

[23] *Pappas v Central National Ins Group of Omaha, supra,* pp 479-482.

[24] *Bradley v Mid-Century Ins Co,* 78 Mich App 67; 259 NW2d 378 (1977).

[25] *Hickman v Community Service Ins Co,* 78 Mich App 1; 259 NW2d 367 (1977).

[26] *Ellis v State Farm Ins Co,* 78 Mich App 189; 259 NW2d 421 (1977).

ther, Wilbert Ellis, who owned an automobile with uninsured motorist coverage. As administrator of Hull's estate, Ellis sought to recover under this coverage.

The thrust of the owned vehicle exclusion (see fn 15) is that the owner of a vehicle or a member of his family occupying the vehicle when it is involved in an accident with an uninsured motorist can only recover under an uninsured motorist endorsement specifically covering that vehicle and may not have resort to the uninsured motorist coverage of a policy issued for a different family vehicle. Since Bradley, Hickman and Hull were injured while riding their own motorcycles—a family vehicle—the owned vehicle exclusion of the uninsured motorist endorsements covering other family vehicles would preclude recovery, although the endorsements would have provided coverage were they injured while riding a bicycle, as a pedestrian, or while occupying a vehicle not owned by them or a family member.[27]

Typically, family members resident in a household will be included among those insured for liability under an automobile policy. Bradley, Hickman and Hull were persons insured for public liability by the policies under which they seek to recover.[28] Bradley, Hickman and Hull's estate

---

[27] The Citizens policy in *Bradley* and the policy in *Hickman* define "insured" for purposes of the uninsured motorist coverage as including the named insured and a relative. The Mid-Century policy in *Bradley* and the policy in *Ellis* define "insured" for that purpose as including the named insured and a relative residing in his household.

[28] The Mid-Century policy was issued to Bradley and thus he was insured for liability as the named insured. The Citizens policy in *Bradley* defines those insured for liability as follows:

"1. The named assured with respect to the owned automobile;

"2. If the named assured is an individual, or husband and wife, or if the automobile is owned jointly by two or more related residents of the same household.

"(a) The named assured with respect to a non-owned automobile,

claim that therefore they were "persons insured thereunder" within the meaning of the uninsured motorist amendment. Accordingly, they were entitled to uninsured motorist protection despite the owned vehicle exclusion.

The insurers assert that Bradley, Hickman and Hull were not "persons insured thereunder" for liability within the meaning of the statute because the statute means insured for liability in the circumstances of the accident; at the time of the accident the liability coverage of the policies under which they seek to recover was not operative because they were not then using the vehicle covered by that policy. The liability portion of the policies provides that a person is insured for liability "with respect to the owned automobile" or "described automobile". Since they were not using that vehicle and were therefore not covered for liability by the policy issued for that vehicle at the time of the accident, the insurers were free to enforce the exclusion unconstrained by the statutory mandate which requires protection only for persons insured for liability by the policy at the time of the accident.

The insurers contend that since a family member injured while riding in one family vehicle would not, while occupying that vehicle, be insured for liability under the policy insuring another family vehicle,[29] the statute does not require

---

"(b) Any resident of the named assured's household with respect to the owned automobile, and

"(c) Any relative with respect to a non-owned private passenger automobile not regularly furnished for the use of such relative."

In *Hickman* liability coverage is extended to the named insured and any resident of his household.

In *Ellis* the "insured" for liability purposes includes a relative of the named insured or his spouse, if a resident of the same household.

[29] But see *State Farm Mutual Automobile Ins Co v Ruuska,* 90 Mich App 767, 775; 282 NW2d 472 (1979), *lv gtd* 407 Mich 948 (1979).

and the policy explicitly precludes uninsured motorist protection under the policy insuring the other vehicle. It is not violative of the statute to fail to provide a liability insured with uninsured motorist protection under a policy insuring a family owned vehicle not involved in the accident.

Several panels of the Court of Appeals so held in cases decided before its decisions in these cases.[30] The insurers stress that in *Pappas* the injured person was held to be insured for liability at the time of the accident by the policy endorsed with the uninsured motorist coverage under which she was permitted to recover.

The instant cases involve the same exclusion, the owned vehicle exclusion, invalidated in *Boettner.* In *Boettner,* a couple owned two automobiles covered by separate policies and were killed while driving together in one of them. The liability section of the policy covering the non-involved automobile would *not* have been operative at the time of the accident, and, accordingly, the couple was not at that time insured for liability under the policy covering that vehicle. Nevertheless, their estates were held entitled to recover under the uninsured motorist endorsement covering the non-involved vehicle.

The insurers argue that *Boettner* applies only to those cases where the person seeking to recover is the named insured in the policy; while it might be inconsistent with the statute to fail to provide the named insured with portable uninsured motorist coverage, other liability insureds may be denied such coverage.[31] In *Pappas,* however, the plaintiff,

---

[30] *Rice v Detroit Automobile Inter-Ins Exchange,* 66 Mich App 600; 239 NW2d 675 (1976); *Nunley v Turner,* 57 Mich App 473; 226 NW2d 528 (1975), *lv den* 394 Mich 816 (1975); *Priestly v Secretary of State,* 67 Mich App 96; 240 NW2d 282 (1976).

[31] The insurers rely on *Rice v Detroit Automobile Inter-Ins Ex-*

a guest passenger, was not the named insured, did not pay the premium and, indeed, was not even a household member. Nevertheless, she was held entitled, because of the statute, to the uninsured motorist protection of the endorsement to the liability policy covering the vehicle.

The rationale of *Blakeslee, Boettner* and *Pappas* does not permit the distinctions advanced by the insurers. The legislative objective in enacting the uninsured motorist amendment was that all persons be protected against the negligent uninsured motorist. The statute mandates coverage, unless rejected, for all persons purchasing automobile liability insurance. Because the industry had generally treated insureds and their relatives living in the same household as a unit, they would all be covered by such endorsements. The accident claims fund would provide protection to those not so covered. In this way, the populace as a whole would be covered and the fiscal integrity of the fund would be protected.[32]

---

*change, supra.* The plaintiff in *Rice* was not the named insured, but, rather, a relative living in the same household. The Court held:

"[The insurance company] was obliged to provide uninsured motorist protection only to the extent that an insured, other than a named insured, is covered for the purpose of liability protection under the policy." *Id.,* p 607.

[32] The Commissioner of Insurance in his report to the Governor regarding this legislation said:

"By adding uninsured motorist coverage to standard automobile liability insurance, only a minute segment of the public would remain exposed to potential uncompensated loss. That category is the pedestrian struck by an uninsured motorist under conditions imposing legal liability on such motorist, where the pedestrian is a member of a family *not* possessing an insured automobile. The current voluntary uninsured motorist coverage insures all family members against injury or death from an uninsured motorist either as an occupant of an automobile or as a pedestrian." Letter from Allen L. Mayerson, Commissioner of Insurance, and John W. Wickstrom, Chief Deputy Commissioner of Insurance, to Governor George Romney (April 6, 1965), regarding HB 2467 (which is substantially identical with SB 544 which subsequently was enacted as § 3010 of the Insurance Code; see fn 8 *supra)* (emphasis in original).

The "with respect to the owned/described automobile" limitations on the liability coverage of the policies by their terms apply not only to relatives who may be insured for liability under the policy, but also to the named insured. If insurers can, by such limitations, narrow the scope of their statutory obligation to provide uninsured motorist coverage, it would mean that no one must have portable uninsured motorist coverage. But, as *Boettner* held, the legislative purpose of protecting the accident claims fund requires that the coverage be portable so that it protects persons insured for liability not only when occupying the insured vehicle, but also when in other vehicles, when on foot or on a bicycle, and in all other circumstances.

The insurers do not question that the Legislature intended that the coverage be portable and that the insured and family members would be covered if injured while occupying a vehicle not owned by a family member, or when a pedestrian, bicyclist, or under other circumstances. However, if we were to read the statute as allowing an owned vehicle exclusion, we see no reason why uninsured motorist coverage could not be further limited to losses incurred in the vehicle to which the liability coverage specifically pertains, thus eliminating all portability. The result would be that when the loss is not incurred in respect to the specific vehicle for which the liability/uninsured motorist coverage is purchased, the insured as well as family members "insured thereunder" would have immediate recourse to the accident claims fund.

The obligation to provide uninsured motorist coverage was tied to liability coverage to facilitate its purchase and to determine the persons who

must be provided with uninsured motorist coverage, and not to provide insurers a means of limiting the coverage to situations in which liability coverage would be in effect. The legislative declaration that no policy shall be delivered unless coverage is provided for the protection of persons "insured thereunder" leaves no room for contractual limitations modifying the generality of "insured thereunder" or exclusions based on the circumstances of the accident. The words "insured thereunder" refer to persons primarily insured for public liability by the policy and not to the circumstances or times that the public liability coverage is actually operative. The same principles apply whether the injured person is the named insured or a relative insured for liability.[33] The amendment contemplated that all such persons would have fully portable coverage. Additionally, it would not be consistent with the goal of protecting the fund to exclude from the portability of uninsured motorist coverage injuries incurred in a family vehicle to which the endorsement does not specifically apply.

The insurers seek also to limit the holding in *Boettner* to the case where there is an uninsured motorist endorsement in effect with respect to the family vehicle in which the insured is injured. In *Blakeslee, Boettner* and *Pappas* the policy insuring the vehicle in which injury occurred had an uninsured motorist endorsement. While Bradley's motorcycle policy had an uninsured motorist endorsement, Hickman and Hull did not have such cover-

---

[33] Courts in other states have so held. See *Touchette v Northwestern Mutual Ins Co, supra* (son of named insured driving own vehicle); *State Farm Mutual Automobile Ins Co v Reaves, supra* (brother of named insured injured while riding mother's motorcycle); *Doxtater v State Farm Mutual Automobile Ins Co, supra* (son of named insured on motorcycle); *State Farm Mutual Automobile Ins Co v Hinkel, supra* (son riding own motorcycle).

age. The insurers in *Hickman* and *Ellis* would have us limit this Court's earlier decisions by holding that the owned vehicle exclusion is enforceable if the family vehicle involved in the accident is not covered by an uninsured motorist endorsement. They further argue that it would be unjust to require an insurer who has received only one premium to provide coverage for any number of owned vehicles.[34]

Neither *Boettner* nor our disposition in these cases extends coverage to any number of motor vehicles; the only *vehicle* covered is the vehicle named in the policy. When the insured purchases uninsured motorist coverage for a vehicle, he insures his family and other occupants of that vehicle against negligent uninsured motorists. His family is insured under all circumstances and guests

---

[34] The insurers rely on *Nunley, supra.* In *Nunley* the plaintiff owned an automobile for which he had uninsured motorist coverage and a motorcycle for which he did not. He was injured while riding the motorcycle and sought to recover under the uninsured motorist endorsement to the automobile policy. The trial court ruled in his favor; the Court of Appeals reversed. The rationale of the Court of Appeals was that an alternative holding "would mean that an insurer to whom a premium had been paid on one car would be liable for uninsured motorist coverage on any number of motor vehicles bought by an insured subsequent to the original purchase of uninsured motorist coverage without purchasing such additional coverage." The Court distinguished *Boettner* as being a case where "there were two identical policies of insurance, issued by the same company on two different automobiles owned by husband and wife, and upon which two separate uninsured motorist coverage premiums were paid".

One commentator has observed:

"It is difficult to accept the propriety of such a restriction on coverage. First, the importance or value of the imputed business purpose for this exclusion seems tenuous as applied to the purchaser who owns more than one vehicle. Acquisition of insurance for a second vehicle is relatively inexpensive; therefore permitting the insurer to withhold coverage for the small return seems of dubious merit. Second, the acceptance of this exclusion as a 'legitimate business purpose' of the insurer with respect to vehicles owned by relatives (residing in the same household) only follows if one expects that such relatives in the same household would buy insurance from the same company. This seems an unwarranted assumption." Widiss, *supra,* § 2.9, p 29.

are covered while occupying the vehicle. Additional vehicles are not covered vehicles unless a premium is paid for them. Thus, an unrelated third party riding in the covered vehicle would be insured against uninsured motorists, but when riding in a different family vehicle he would not be so insured, unless an uninsured motorist premium had also been paid with respect to that vehicle.

The status of the named insured and his relatives as persons insured against negligent uninsured motorists is not altered by there being other family vehicles having no uninsured motorist coverage. They acquire their insured status when coverage is purchased for any household vehicle. Thereafter, they are insured no matter where they are injured. They are insured when injured in an owned vehicle named in the policy, in an owned vehicle not named in the policy, in an unowned vehicle, on a motorcycle, on a bicycle, whether afoot or on horseback or even on a pogo stick.[35]

We do not suggest that a person insured for liability under a policy providing uninsured motorist coverage for one vehicle has additional rights to coverage because he was riding in another owned vehicle at the time of the accident. A person so insured who is injured in an owned vehicle not named in the policy is required to be covered because he is an insured within the intendment of the amendment and the amendment has been held to require that all insureds have fully portable uninsured motorist coverage.[36]

We agree with the analysis of the Court of Appeals:

"In the instant case *[Bradley]* and its two companion

---

[35] See *Vantine v Aetna Casualty & Surety Co, supra; State Farm Mutual Automobile Ins Co v Robertson, supra.*

[36] See fn 33, *supra.*

cases, *Ellis v State Farm Ins Co, [supra],* and *Hickman v Community Service Ins Co, [supra],* the plaintiff is an 'insured' under the liability section definition of the insurance policy in question. Once having been afforded this status, and so long as it exists, MCL 500.3010; MSA 24.13010 [the amendment to the Insurance Code] requires that an offer of uninsured motorist insurance must be extended, for protection from injuries caused by uninsured motorists wherever the 'insured' happens to be and whatever the 'insured' happens to be doing at the time of the injury."[37]

We conclude that once uninsured motorist coverage is purchased, the insured and his relatives insured for liability have uninsured motorist protection under all circumstances. Uninsured motorist coverage, like no-fault coverage, is personal and portable.

## C. *Ruesing*

In *Ruesing,*[38] which also concerns the owned vehicle exclusion, the Court of Appeals followed decisions of that Court (see fn 30) distinguishing *Blakeslee* and *Boettner* and concluded that uninsured motorist coverage was not mandatory because the decedent was not insured for liability at the time of the accident; as set forth in Part B, *supra,* we disagree with that analysis. Nevertheless, we affirm.

Francis Ruesing, Jr., took his father's automobile without permission and allowed a friend to drive. He was killed in an accident, caused by the friend's negligence, involving another vehicle. Ruesing, Sr., administrator of his son's estate, could not recover for the friend's negligence under

---

[37] *Bradley v Mid-Century Ins Co, supra,* p 72.

[38] *Ruesing v Aetna Casualty & Surety Co,* unpublished opinion of the Court of Appeals, decided June 15, 1977 (Docket No. 28760).

the liability portion of the policy because it did not provide coverage when the vehicle was being driven without his permission. He sought to recover under the uninsured motorist coverage.

While Ruesing, Jr., was included as an insured for uninsured motorist coverage, the owned vehicle exclusion by its terms precludes recovery because, although the vehicle was specifically covered by the endorsement, it was deemed to be an owned vehicle "other than an insured automobile" because it was being driven without permission.

Ruesing, Jr., was not insured for liability under the terms of the policy; the primary coverage extended only to the named insured. Because Ruesing, Jr., was not a person insured for liability, the contractual limitation on the portability of his uninsured motorist coverage under the policy does not violate the *Blakeslee, Boettner* and *Pappas* rationale.

Ruesing, Sr., advances two reasons why the limitation on portability is violative of the uninsured motorist amendment, notwithstanding that Ruesing, Jr., was not a liability insured:

i) Were the facts altered slightly the exclusion would lead to unacceptable results. If Ruesing, Sr.'s vehicle were stolen and he was run over by the thief, the exclusion would bar his recovery. If that were the case, we would no doubt void the exclusion since Ruesing, Sr., is a liability insured and within the intendment of the amendment. Ruesing, Sr., argues "[i]f the exclusion denies or would deny benefits to an insured under the liability provision of the policy, then the exclusion is void. * * * Nothing in the law provides that the exclusion is void in some circumstances but not others."

Ruesing, Jr., in contrast with Bradley, Hickman

and Hull was not a primary insured under the policy; he was not insured for liability unless, under a separate provision, he was using the vehicle with the owner's permission. Since he was not a primary insured, the circumstances of his use could properly affect the scope of the liability coverage and the corresponding mandatory uninsured motorist protection.

*Boettner's* conclusion that an owned vehicle exclusion is void as to "persons insured thereunder" does not mean that such a clause is a nullity and cannot be applied to persons not so insured. While in *Pappas* we said "[w]here a policy of insurance does not offer statutorily required uninsured motorist coverage, conforming language must be read into the terms of the policy",[39] we are not here presented with a case where statutorily required coverage is denied. If the exclusion were used to deny coverage to a liability insured—Ruesing, Sr., or one using the vehicle with his permission—[40]we would reform the insurance policy.

ii) Ruesing, Sr., further argues that we are presented with such a case since he would be entitled, as his son's heir-at-law, to maintain a wrongful death action for the friend's negligence. He is thus a "person insured thereunder who [is] legally entitled to recover damages from * * * [an] operator of [an] uninsured motor vehicle, * * * because of * * * death, resulting therefrom."

Were we to accept this argument, we would attribute to the Legislature an intent to mandate coverage in all cases where a liability insured has a relative whose death was caused by a negligent uninsured motorist and whose property, had he

---

[39] *Pappas, supra,* p 482.

[40] *Pappas, supra.* Compare *State Farm Mutual Automobile Ins Co v Sivey,* 404 Mich 51; 272 NW2d 555 (1978).

died intestate, would devolve in any part upon the insured, although the relative did not reside in the household of the insured and may have been a distant relation living in a different state.

We think that the Legislature meant that uninsured motorist coverage must be provided to protect those "insured thereunder" when they themselves suffer "bodily injury, sickness or disease, including death, resulting therefrom" and not to protect them when loss is incurred as a result of personal injury sustained by others.

No other reasons for invalidating the exclusion's operation with respect to one insured for uninsured motorist coverage, but not for liability, were argued to us in this case[41] and therefore we conclude that because Ruesing, Jr., was not insured for liability under the policy, the limitation on the portability of uninsured motorist coverage as applied to him was not violative of the uninsured motorist amendment.

## D. *Fletcher*

In *Blakeslee* this Court invalidated an "other insurance" clause. The insured was permitted to stack benefits under different policies—inter-policy stacking—to recover the amount of her actual loss. The issue here is whether the rationale of *Blakeslee* applies when an insured seeks to stack coverages on two vehicles insured under the same policy and the insurer invokes a limits of liability clause which has much the same effect as an other insurance clause.[42]

---

[41] See, *e.g., State Farm Mutual Automobile Ins Co v Ruuska, supra,* 90 Mich App 777-778.

[42] The standard "limits of liability" clause reads:

"Regardless of the number of insureds under this policy, the company's liability [under uninsured motorist coverage] is limited as follows:

The Fletchers had two automobiles covered by a single policy written by Aetna. Their son, Scott, was injured while a passenger on his brother's motorcycle which collided with an automobile being negligently driven by an uninsured motorist. The Fletchers sought to recover a total of $40,000, $20,000 under the endorsement for each automobile. Aetna admitted liability of only $20,000, relying on a limits of liability clause in the uninsured motorist endorsement:

"Regardless of the number of * * * automobiles * * * to which this policy applies,

* * *

"[T]he limit for uninsured motorist coverage stated in the declaration as applicable to 'each accident' is the total limit of Aetna Casualty's liability for all damages because of bodily injury sustained by one or more persons as the result of any one accident."

The question is whether intra-policy stacking is sufficiently different from inter-policy stacking to justify different treatment under the statute.[43]

The insurer argues that when there are *two* different policies, by reason of the other insurance clause one of the policies does not provide the required coverage when the accident occurs although it appears to have been issued in compli-

---

"(a) The limit of liability stated in the [uninsured motorist coverage] as applicable to 'each person' is the limit of the company's liability for all damages because of bodily injury sustained by one person as the result of any one accident and, subject to the above provision respecting 'each person', limit of liability stated in the [uninsured motorist coverage] as applicable to 'each accident' is the total limit of the company's liability for all damages because of bodily injury sustained by two or more persons as the result of any one accident." Widiss, *supra,* p 293.

The corresponding "other insurance" clause is set forth in fn 16, *supra.*

[43] Brown, *Intra-Policy Stacking of Uninsured Motorist and Medical Payments Coverages: To Be or Not to Be,* 22 SD L Rev 349 (1977).

ance with the statute because when issued it contained the required endorsement. In such a case *(Blakeslee)* the Court voids the clause to make the policy conform to the statute. In the instant case, however, there is only *one* policy and that policy conforms to the statute because the injured person is able to collect for injuries inflicted by an uninsured motorist up to the policy limit—such a policy is not a "motor vehicle liability policy" that failed to provide coverage for persons insured thereunder.[44] We reject this distinction as formalistic.

The effect of the "limits of liability" clause is the same as the "other insurance" clause. The insured pays two premiums, secures statutory coverage for two vehicles, but would be permitted to collect under only one coverage.[45] We agree with the Court of Appeals that the *Blakeslee* rationale that the Legislature intended to protect against the negligence of uninsured motorists while maintaining the fiscal integrity of the Motor Vehicle Accident Claims Fund applies and that no distinction can be made on the basis that family-owned vehicles are insured under a single rather than multiple policies, and with its adoption of the analysis of an earlier panel:

"While plaintiff subsumed all of its business with defendant's parents under one code number, we believe that this did not alter the fundamental character of its dealings with them. Although there was one policy number issued by plaintiff insurance company, two

[44] "No automobile liability or motor vehicle liability policy insuring against loss * * * shall be delivered or issued * * * with respect to any motor vehicle * * * unless coverage is provided therein * * * for bodily injury * * * for the protection of persons insured thereunder." MCL 500.3010; MSA 24.13010.

[45] See *Federated American Ins Co v Raynes,* 88 Wash 2d 439; 563 P2d 815 (1977).

premiums were charged and paid which covered two cars. The question thus presented is whether the Michigan Supreme Court intended the question of multiple coverage to be dependent on the number of insurance policies issued by the insurer or by the number of premiums paid by the insured. To hold that the answer depends on the question of how many policy numbers were issued would be illogical since the insurance companies would merely combine several separate policies issued to the same insured under one policy. Plaintiff insured the parents' two cars and required two separate premiums to be paid. From the insured's point of view, this relationship is the same as having two policies, regardless of how the insurer subsequently handles those paid premiums for its administrative purposes."[46]

This Court said in *Blakeslee:*

"It would be unconscionable to permit an insurance company offering statutorily required coverage to collect premiums for it with one hand and allow it to take the coverage away with the other by using a self-devised 'other insurance' limitation."[47]

We conclude that an insurer may not collect an uninsured motorist premium for statutorily required uninsured motorist coverage for more than one vehicle and yet limit its liability to that which would arise if there were only one vehicle and one premium paid. A different result is not justified where the vehicles are insured and the premiums paid under one policy rather than multiple policies.[48]

---

[46] *Citizens Mutual Ins Co v Turner,* 53 Mich App 616, 618; 220 NW2d 203 (1974).

[47] *Blakeslee v Farm Bureau Mutual Ins Co, supra,* p 474.

[48] To be sure, it may be less expensive to purchase insurance for two automobiles on one policy than on separate policies for the two vehicles. It, however, appears that the saving is due to a discount which bears no relation to the scope of the risk covered by the uninsured motorist endorsement. In the instant case, the straight rate

## II. *Davidson*

The accidents in *Bradley, Hickman, Ellis* (Part B, *supra), Ruesing* (Part C, *supra)* and *Fletcher* (Part D, *supra),* all occurred before the repeal of the uninsured motorist amendment to the Insurance Code. In *Davidson* the insured motorist coverage was issued and the accident occurred after repeal of the amendment.

Gary Davidson was injured when his motorcycle was struck by an uninsured motorist. The motorcycle and an automobile owned by Davidson were insured by State Farm Mutual under separate policies, each having an uninsured motorist endorsement. Davidson collected under the uninsured motorist endorsement to the motorcycle policy and sought also to collect under the uninsured motorist endorsement to the automobile no-fault policy.

State Farm denied liability and sought a declaratory judgment. It relied alternatively on "limits of liability",[49] "other insurance",[50] and "owned vehicle exclusion"[51] clauses contained in the policy covering the automobile. Its motion for summary judgment was granted.

The Court of Appeals affirmed, ruling the owned vehicle exclusion applicable and enforceable:

"Prior to the repeal of the mandatory minimum uninsured motorist statute, MCL 500.3010; MSA 24.13010, the above-cited exclusions clause would be

---

for each automobile was computed and 15% deducted from the premium for each automobile. The discount applied to all components of the premium. The discount was given on the first vehicle as well as the second.

[49] See fn 42, *supra,* for a substantially similar clause.

[50] See second paragraph, fn 16, *supra.*

[51] See fn 15, *supra,* for a similar clause.

void. *Boettner v State Farm Mutual Insurance Co,* 388 Mich 482; 201 NW2d 795 (1972). That statute, however, was repealed with the enactment of the no-fault insurance act, MCL 500.3101 *et seq.;* MSA 24.13101 *et seq.* The basis for finding such exclusions clauses invalid having been eliminated, and finding on the present record no basis for upsetting the agreement entered into by the parties, we affirm the trial court."[52]

State Farm advances the rationale of the Court of Appeals and directs our attention to *Horr v Detroit Automobile Inter-Ins Exchange,*[53] where this Court, before *Blakeslee* and *Boettner,* enforced an "other insurance" clause to prevent stacking of uninsured motorist benefits applicable to an accident occurring in 1963, two years before the uninsured motorist amendment to the Insurance Code:

"We find no statutory or decisional law of this state applicable in 1963 to the insurance clauses requiring our interpretation and the parties assert there were none. Consequently, our task is limited to determining the intent of the contracting parties."[54]

The Court construed the language "damages shall be deemed not to exceed the higher of the applicable limits of liability of this insurance and such other [available] insurance", to mean that the maximum coverage of the policy combined with other available insurance was $10,000 and that the two policies involved, which both contained this clause, did not stack and the companies were liable on a pro rata basis, each contributing $5,-000.

State Farm asks us to return to the pre-*Blakes-*

---

[52] Per curiam opinion filed July 25, 1977 (Docket No. 29626).

[53] *Horr v Detroit Automobile Inter-Ins Exchange,* 379 Mich 562; 153 NW2d 655 (1967).

[54] *Id.,* p 566.

*lee/Boettner* position enunciated in *Horr,* and enforce the literal terms of the insurance contract.

Davidson counters that public policy and unconscionability challenges were not addressed in *Horr* and are not foreclosed by repeal of the uninsured motorist amendment. He argues that we should "ascertain that meaning of the contract which the insured would reasonably expect", that the "other insurance" and "owned vehicle exclusion" clauses are adhesion provisions and should not be enforced, and that the uninsured motorist amendment was repealed not because the Legislature changed the public policy announced in *Boettner/Blakeslee* but because the no-fault act made insurance compulsory and the Legislature assumed that there would be no uninsured motorists and, therefore, no need for uninsured motorist insurance.

Davidson contends that neither the owned vehicle exclusion nor the other insurance clause should be enforced. State Farm contends that the other insurance clause is inapplicable because the owned vehicle exclusion precludes recovery under the endorsement to the automobile policy and consequently there is no "other insurance" available.

We hold that in policies effective on or after October 1, 1973, the date of repeal of the uninsured motorist amendment, other insurance clauses which provide that damages shall be deemed not to exceed the policy limits and that the uninsured motorist coverage of the policy shall apply pro rata where there is other similar insurance available are enforceable and benefits under such policies may not be stacked.

We need not decide whether owned vehicle exclusions to otherwise portable coverage defeat the

reasonable expectations of insureds[55] because if the exclusion were held invalid and the endorsement to the automobile policy construed to provide coverage, Davidson would, under the other insurance clause, have other insurance available and be deemed to have suffered damages not in excess of the higher of the limits of liability of the two policies.[56] Both policies provide $20,000 coverage; Davidson collected $20,000 under the endorsement to the motorcycle policy and so would not be entitled to further benefits under the endorsement to the automobile policy.

In a policy with an other insurance clause, the insurer makes no promise to provide coverage in the stated amounts without regard to the insured's having available from other sources similar insurance benefits or protection. The insurer promises only that the insured will have insurance coverage in the stated policy limits from some source.

We turn to the question whether policies which provide such coverage are against public policy or unconscionable or defeat reasonable expectations of the insured.

A

In *Blakeslee,* this Court held an other insurance

---

[55] This issue is present in *Raska v Farm Bureau Mutual Ins Co of Michigan,* unpublished per curiam opinion by the Court of Appeals (Docket No. 78-2, May 24, 1979), *lv gtd* 407 Mich 946 (1979), which involves an "owned vehicle exclusion" to an endorsement providing otherwise portable medical expense and disability coverage. *State Farm Mutual Automobile Ins Co v Ruuska,* 90 Mich App 767; 282 NW2d 472 (1979), *lv gtd* 407 Mich 948 (1979), presents the issue of the validity of an owned vehicle exclusion to the residual liability coverage required by the no-fault act and the portability of residual liability insurance generally.

[56] The other insurance clause held inapplicable in *Boettner* referred only to injury "while occupying an automobile not owned by a named insured." The clause we apply here is operative where "the insured has other similar insurance available to him."

clause invalid as contrary to the public policy reflected in the uninsured motorist amendment and the Motor Vehicle Accident Claims Act. The uninsured motorist amendment was repealed and the liability of the fund restricted before State Farm issued the policy and endorsement containing the clauses sought to be invalidated here.

Davidson argues that the legislative decision to repeal the uninsured motorist amendment was based on an erroneous assumption that the uninsured motorist problem would be resolved by the compulsory insurance provision of the no-fault act. It continues to be the policy of this state that persons who suffer loss due to automobile accidents have a source and means of recovery.

State Farm counters that the Legislature did not overlook the risk of uninsured motorists when drafting the no-fault legislation and repealing the uninsured motorist amendment. Criminal penalties and other sanctions are imposed on those who fail to maintain security and actions to recover economic damages from such persons are permitted. We are satisfied, however, that the Legislature may have thought that these sanctions would be sufficient to eliminate uninsured motorists and therefore State Farm's argument does not fully respond to Davidson's contention.

When *Blakeslee* and *Boettner* were decided we perceived a legislative statement of public policy. Uninsured motorist coverage was required to be offered with each and every liability policy and, when accepted, it was to provide coverage in statutory amounts and to all liability insureds. Also, the fund was potentially liable for all amounts not recovered from insurers. Guided by the legislative policy reflected in the uninsured motorist amendment and the Motor Vehicle Accident Claims Act,

this Court voided unambiguous clauses of insurance contracts and held the insurers liable under both policies in each case.

*Blakeslee* and *Boettner* were decided October 31, 1972. On December 13, 1972 the House Committee on Insurance reported on SB 1480, recommending that the bill be passed after the adoption of certain amendments.[57] The bill, as previously passed by the Senate,[58] consisted of two sections on mortgage guarantee insurance. The House Committee on Insurance recommended amendments which would change the assigned claims provisions of the adopted, but not yet effective, no-fault act and repeal the uninsured motorist amendment to the Insurance Code. The amendments were adopted, and the bill passed and reported back to the Senate which also passed the bill as amended. SB 1480 was approved as 1972 PA 345 on January 9, 1973.

Davidson correctly states that the no-fault act and the repeal of the uninsured motorist amendment became effective the same day. We are not convinced, however, that the Legislature repealed the uninsured motorist amendment simply because it believed that there would be no uninsured motorists after the effective date of no-fault. Rather, we are persuaded, in light of the Legislature's providing for the repeal soon after our decisions in *Blakeslee* and *Boettner* and so providing in a bill which dealt with the assigned claims facility, that the uninsured motorist amendment was repealed because the Legislature concluded that the policy of compensating accident victims no longer demanded that uninsured motorist endorsements provide the coverage required by *Blakeslee* and *Boettner*.

---

[57] 4 Michigan House J (1972) 3235-3237.
[58] 3 Michigan Senate J (1972) 2041-2042.

The concerns which led to enactment of the uninsured motorist amendment and the Motor Vehicle Accident Claims Act are no longer as pressing. This is not due to any elimination of the uninsured motorist, but, rather, to the no-fault act's providing other forms of protection against his negligence. Before no-fault, an accident victim seeking compensation could proceed only in tort. If the negligent driver was uninsured the victim would ordinarily receive no compensation for his injuries other than that recovered from the Motor Vehicle Accident Claims Fund. Under the no-fault act, an accident victim proceeds against his own insurer. If he is not insured, he claims benefits from the insurer of the vehicle or driver involved in the accident. If the owner and driver are uninsured motorists, he proceeds against the assigned claims facility which provides no-fault benefits where there is no insurance applicable to the accident.[59] Thus, victims of uninsured motorists now have insurance compensation without regard to whether there is uninsured motorist coverage.

Also, before no-fault, uninsured motorist coverage protected the fiscal integrity of the fund. It cannot similarly protect the assigned claims facility which assigns to insurers on a rotating basis no-fault claims where there is no coverage otherwise applicable. In the no-fault system uninsured motorist coverage is a substitute for residual liability insurance. It provides some compensation in cases where the victim has suffered severe (above-the-threshold) injuries and there is no residual liability coverage to provide compensation for pain and suffering and excess economic loss. (See Part III, *infra.*) In contrast, the assigned claims facility provides PIP benefits for medical expenses and

_____
[59] MCL 500.3172; MSA 24.13172.

work loss. By statute, the assigned claims facility is liable for PIP benefits when there is no PIP insurance otherwise applicable; it is irrelevant whether the injured person has uninsured motorist coverage available to him. Consequently, judicial extension of uninsured motorist coverage would have no financial effect on the assigned claims facility.[60]

We are persuaded that the Legislature repealed the uninsured motorist amendment not because it assumed there would be no uninsured motorists, but because after the passage of no-fault a person injured by an uninsured motorist had a source of recovery for all damages except pain and suffering and excess economic loss.

The uninsured motorist amendment and the Motor Vehicle Accident Claims Act were enacted to assure that persons injured by negligent uninsured motorists would have some source of recovery. The no-fault act, which assures that all persons injured in motor vehicle accidents receive a minimum level of compensation, fulfills that apparent legislative objective.

---

[60] Indeed, rarely will the case arise where an uninsured motorist endorsement and the assigned claims provisions of the no-fault act are applicable to the same accident.

The assigned claims provisions are involved only where there is no other PIP insurance applicable to the injury. In order for there to be no PIP insurance applicable, the injured person and relatives domiciled in his household must have no PIP insurance and the owners and drivers of all involved motor vehicles must be uninsured. Uninsured motorist coverage is usually provided as an endorsement to a basic automobile insurance policy. If there is no PIP insurance applicable to an injury, it is unlikely that there will be uninsured motorist coverage applicable.

Uninsured motorist coverage is offered with motorcycle liability policies. An accident involving an uninsured motor vehicle and a motorcyclist who lives in a household with no PIP insurance applicable to its members and who has purchased uninsured motorist coverage for his motorcycle appears to be the only situation where uninsured motorist coverage and the assigned claims provisions will be applicable to the same injury.

True, no-fault benefits may be insufficient to fully compensate one injured by a negligent uninsured motorist. But no accident victim is permitted, under the no-fault act, to recover for below-threshold pain and suffering, and one's ability to recover where a tort action is permitted is largely dependent on the fortuitous circumstances of the tortfeasor's collectibility and insurance coverage. Because uninsured motorist coverage could, under the uninsured motorist amendment, be refused by an insured, only the fund guaranteed a source of recovery for tort damage and the limit of its liability was $20,000.[61] The Legislature apparently saw the substitution of a right to PIP benefits—unlimited medical expense and work loss and survivor's loss in amounts and for times limited by law—as an appropriate substitute for whatever additional recoveries might result from continuing mandatory uninsured motorist coverage and the possible $20,000 recovery from the fund. We are persuaded that there is no legislative policy requiring us to hold other insurance clauses unenforceable.

### B

Davidson argues that the other insurance clause is "a standard adhesion provision employed * * * to avoid the obligation of providing uninsured motorist coverage notwithstanding [the insurer's] collection of premiums". He directs our attention to *Blakeslee* and *Boettner* where this Court said "[i]t would be unconscionable to permit an insurance company offering statutorily required coverage to collect premiums for it with one hand and allow it to take the coverage away with the other

---

[61] MCL 257.1123; MSA 9.2823.

by using a self-devised * * * limitation", and cases
from other jurisdictions where the insured was
permitted to recover under more than one policy
to avoid allowing a windfall to the insurer who
charges multiple premiums.[62]

While there was unconscionability language in
*Blakeslee* and *Boettner,* those decisions rested on
the legislative policy of the uninsured motorist
amendment and the Motor Vehicle Accident
Claims Act. As the quoted language indicates, the
self-devised limitations were unconscionable be-
cause the insured had paid for *statutorily* required
coverage and the limitations encroached on the
scope and extent of that coverage. *Blakeslee* and
*Boettner* did not hold that other insurance clauses
are unconscionable where the offer, scope and
extent of coverage is not mandated by statute.

Davidson argues that it is unconscionable to
require an insured to pay two premiums for two
coverages and be limited to recovery under one
policy.

The argument has a mathematical nicety, but it
assumes a windfall to the insurer. Insurance pre-
miums are not necessarily computed to accurately
reflect risk, and, indeed, this Court's decision in
*Shavers* [63] holding the compulsory feature of the
no-fault act unconstitutional indicates the Court's
recognition of this reality.

The risk that a member of a family with three
drivers and ten youngsters will sustain injury due

[62] *Van Tassel v Horace Mann Mutual Ins Co,* 296 Minn 181, 187;
207 NW2d 348, 351-352 (1973) (based on "the fact that the legislature
required an uninsured-motorist provision in all policies, added to the
fact that a premium has been collected on each of the policies
involved").

*United Services Automobile Ass'n v Dokter,* 86 Nev 917, 920; 478
P2d 583, 585 (1970).

[63] *Shavers v Attorney General,* 402 Mich 554, 609; 267 NW2d 72
(1978).

to an uninsured motorist is certainly much greater than the risk that a driver who lives alone will sustain such injury. Yet the cost of uninsured motorist coverage is the same for both. Although the coverage protects persons, the premium is linked to the vehicle. One premium is paid for each vehicle, regardless of the number of persons the insurer undertakes to protect by the endorsement. Nor is the amount of the premium affected by the number of persons insured. Thus, the insurer spreads the cost of uninsured motorist coverage evenly among the vehicles to which there is uninsured motorist coverage applicable, and not according to the risk underwritten by each individual policy.

Because the premium rate is not based on the risk covered, but, rather, reflects an apportionment of the cost of uninsured motorist coverage, an unconscionability argument based upon the insured's purchasing two coverages and collecting only once must fail.

The insured does not purchase two coverages; he contributes twice to the total cost of uninsured motorist coverage. He is required to do so because he has chosen to have both vehicles participate in the system. He could withhold payment for the second vehicle, and that vehicle would not have uninsured motorist coverage. Occupants of that vehicle who do not have other uninsured motorist coverage applicable to them would have no right to compensation for injuries above the threshold inflicted by a negligent uninsured motorist. Or, he may choose to provide coverage for such persons. To do so, he must place the vehicle in the system, and the cost to him of the coverage is one car's pro rata share of the cost of uninsured motorist coverage.

With each premium the insured is promised that for each accident involving a negligent uninsured motorist he will have available to him $20,000/40,000 coverage from some source. The premium has no relation to the risk that he or a family member will be involved in such an accident. Rather, it is a standardized charge for participation in the uninsured motorist coverage system. Since there is presently no requirement that the premium charged for voluntarily provided and purchased automobile insurance accurately reflect the risk covered by such insurance,[64] and there is no evidence that the insurer reaps a windfall, we cannot say that other insurance clauses are unconscionable because they limit the coverage applicable to a single accident to that provided by a single policy.

## C

Davidson argues that the other insurance clause defeats reasonable expectations of insureds. We are not persuaded that one injured by a negligent uninsured motorist expects to have recourse to more than one policy.

Other insurance and prorating clauses have long been with us. It has never been thought that insureds could stack liability insurance.[65] Indeed, such clauses in liability policies are expressly per-

[64] The essential insurance act, 1979 PA 145, does not become effective until January 1, 1981. Uninsured motorist coverage is not specifically mentioned but might be within the scope of the act. See § 2102, subds (2) and (3).

[65] The stacking of liability policies—one person's receiving the combined coverages in one accident—is an issue distinct from those which arise when the owner of a vehicle seeks indemnification in that capacity and the driver seeks indemnification in a different capacity (see *Ruuska,* fn 55 *supra),* or where the insured driver seeks to enforce the policy limits of his own policy although lesser limits of liability are applicable to the involved vehicle.

mitted by statute.[66] One who has purchased two liability policies, each providing $20,000 coverage for each family member driver and all persons driving a designated vehicle with permission, does not expect to have $40,000 liability insurance available to him should he be involved in an accident. To be sure, the first policy covered the insured, his family, and all persons driving the covered vehicle, and the second policy, different only in its designating a different covered vehicle, provided duplicate operator's coverage for the insured and his family, and the premium charged for the second policy did not reflect that duplication of coverage. Nevertheless, the insured has no expectation of duplicate coverage should he or a family member be involved in an accident.

In this context, uninsured motorist coverage is similar to liability insurance. There is nothing in the nature of uninsured motorist coverage to make expectations of duplicate coverage more likely or reasonable. Uninsured motorist coverage is largely portable, but so is liability coverage. Most liability policies contain both owner's and operator's cover-

---

[66] MCL 257.520, subds (i) and (j); MSA 9.2220, subds (i) and (j).

We reject the argument that other insurance clauses in uninsured motorist coverage are impermissible because the Legislature has not authorized them as it has in liability insurance policies.

Liability insurance is extensively regulated by statute. Required and permissive provisions in such policies are set forth in MCL 257.520; MSA 9.2220. MCL 257.520(g); MSA 9.2220(g) provides:

"Any policy which grants the coverage required for a motor vehicle liability policy may also grant any lawful coverage in excess of or in addition to the coverage specified for a motor vehicle liability policy and such excess or additional coverage shall not be subject to the provisions of this chapter."

The implication is that the statutory liability coverage is subject to strict requirements and regulation and that the insurer is free to issue other forms of coverage or excess liability coverage subject to whatever contractual limitations it wishes as long as otherwise lawful. Thus, if other insurance clauses are permissible in statutory liability policies, a fortiori they are permissible in uninsured motorist endorsements.

age; the operator's coverage in general follows the insured, no matter whose car he is driving.

It may be argued that expectations of duplicate coverage were engendered by the uninsured motorist amendment and this Court's decisions in *Blakeslee* and *Boettner* —that uninsured motorist coverage took on a definite form and scope and insureds would not expect that coverage to suddenly change.

Whatever expectations in relation to insurance coverage existed before no-fault, we cannot say that those expectations could reasonably survive its effective date. Uninsured motorist coverage itself changed after no-fault, not because the language of the policies changed, but because the no-fault act changed the obligations and liabilities of insurers and drivers. Uninsured motorist coverage is now a substitute for residual liability insurance and is no longer the primary means of recovery for one injured by an uninsured motorist. Because the purpose and function of the endorsement is different from what was provided when *Blakeslee* and *Boettner* were decided, we cannot say that an insured has reasonable expectations that the scope of the coverage will remain unchanged.

Further, any argument that insureds, contrary to policy provisions and the treatment generally accorded other types of insurance, developed expectations that stacking would be permitted, because *Blakeslee* and *Boettner* permitted such stacking, must also account for the rationale of those cases. *Blakeslee* and *Boettner* were based on the uninsured motorist amendment and the Motor Vehicle Accident Claims Act and could therefore not engender reasonable expectations that the Court would invalidate similar insurance clauses in the absence of such legislative provisions.

## III. *Williams* and *Schigur*

In *Williams* and *Schigur* the plaintiffs purchased the standard no-fault policy and also paid an additional premium for uninsured motorist coverage. Both plaintiffs were involved in accidents with negligent uninsured motorists. The insurers paid no-fault benefits as required by the policies. Arbitrators found both plaintiffs entitled to $20,000 uninsured motorist benefits exclusive of economic loss. Relying on a clause in the policy, the companies deducted the amount of the no-fault benefits from the $20,000 payable under the endorsement.[67] The clause reads:

> "In consideration of the insurance afforded under section I of this endorsement and the adjustment of applicable rates any amount payable under the protection against uninsured motorists (family protection) coverage shall be reduced by the amount of any personal protection benefits paid or payable under this or any other automobile insurance policy because of bodily injury to an eligible injured person."

The insurers would have us construe the clause as authorizing the subtraction of amounts paid for no-fault benefits from the policy limits of uninsured motorist protection without regard to the total damages which would be payable by the uninsured motorist or the nature of those damages, economic or non-economic. We decline to do so. The set-off clause, whether regarded as ambiguous[68] or inconsistent with the reasonable expecta-

---

[67] The deduction was $13,000 in *Schigur*. The record does not indicate the amount of no-fault benefits paid in *Williams*.

[68] The uninsured motorist endorsement reads the same as it did under prior law. The insurer commits itself "to pay *all sums* which the insured or his legal representative shall be legally *entitled to* recover as damages from the owner or operator of an uninsured automobile because of bodily injury * * *". (Emphasis supplied.) If

tions of the insured,[69] cannot be enforced in the
manner the insurers seek.

Under the no-fault motor vehicle liability act an
insured may collect from his insurer for work loss
and medical expenses without regard to fault.[70] He

this clause is read alone, the insurer would be obligated to pay all
amounts payable by the uninsured motorist—all economic as well as
above-the-threshold non-economic damages—although some economic
damages have been compensated by no-fault benefits already paid.

The set-off clause is subject to the construction that it authorizes
the deduction of amounts paid for no-fault benefits from the total
amount recoverable as damages from the uninsured motorist. The set-
off clause authorizes reduction of amounts "payable under the protec-
tion against uninsured motorist coverage". The uninsured motorist
endorsement providing such coverage obligates the insurer to "pay all
sums * * * recover[able]" as damages from the uninsured motorist.
The set-off clause can be read as authorizing subtraction of no-fault
benefits paid from "all sums * * * recover[able]" as damages from the
uninsured motorist, and not from the policy limits of the uninsured
motorist coverage.

[69] Professor Keeton states the following principle:

"The objectively reasonable expectations of applicants and intended
beneficiaries regarding the terms of insurance contracts will be hon-
ored even though painstaking study of the policy provisions would
have negated those expectations." Keeton, Insurance Law, § 6.3(a), p
351.

See also Keeton, *Insurance Law Rights at Variance with Policy
Provisions, Part One,* 83 Harv L Rev 961 (1970), *Part Two,* 83 Harv L
Rev 1281 (1970); Case Note, *The Role of Public Policy and Reasonable
Expectations in Construing Insurance Contracts,* 47 Temple L Quar-
terly 748 (1974).

The doctrine of reasonable expectations has been recognized in the
case law. *C & J Fertilizer, Inc v Allied Mutual Ins Co,* 227 NW2d 169
(Iowa, 1975); *Jones v Continental Casualty Co,* 123 NJ Super 353; 303
A2d 91 (1973); *Corgatelli v Globe Life & Accident Ins Co,* 96 Idaho
616; 533 P2d 737 (1975); *Smith v Westland Life Ins Co,* 15 Cal 3d 111;
123 Cal Rptr 649; 539 P2d 433 (1975); *National Indemnity Co v
Flesher,* 469 P2d 360 (Alas, 1970); and *Kievit v Loyal Protective Life
Ins Co,* 34 NJ 475, 482-483; 170 A2d 22 (1961):

"When members of the public purchase policies of insurance they
are entitled to the broad measure of protection necessary to fulfill
their reasonable expectations. * * * Where particular provisions, if
read literally, would largely nullify the insurance, they will be
severely restricted so as to enable fair fulfillment of the stated policy
objective."

See, also, *Gray v Zurich Ins Co,* 65 Cal 2d 263, 269-270; 54 Cal Rptr
104; 419 P2d 168 (1966), quoted in *Zurich Ins Co v Rombough,* 384
Mich 228, 232-233; 180 NW2d 775 (1970).

[70] MCL 500.3105(2), 500.3107; MSA 24.13105(2), 24.13107.

See *McKendrick v Petrucci,* 71 Mich App 200, 204; 247 NW2d 349

may sue the negligent tortfeasor for excess economic loss and, if the threshold of injury is met, for non-economic loss.[71] The statute requires that motorists carry residual liability insurance in addition to no-fault insurance to provide a source of recovery to persons severely injured as a result of driver negligence.[72] If a motorist is uninsured he may be sued for all economic loss as well as above-threshold non-economic loss.[73]

A purpose of the no-fault act is to provide a contractual right of action against one's own insurer for wage loss and medical expenses arising from a motor vehicle accident.[74] A tort action for non-economic and excess economic loss was preserved in cases of severe loss. The Legislature has thus divided an injured person's loss into two categories—loss for which the no-fault insurer is liable and loss for which the tortfeasor is liable. No-fault insurance provides security for the first type; uninsured motorist coverage, which presupposes that the insured is entitled to recovery under the tort system, provides security for the second type—it is offered to protect against being left with a worthless claim against an uninsured motorist.[75]

---

(1976), and *Schigur v West Bend Mutual Ins Co,* 80 Mich App 640, 643; 264 NW2d 83 (1978).

[71] MCL 500.3135; MSA 24.13135.

[72] MCL 500.3131; MSA 24.13131.

[73] MCL 500.3135; MSA 24.13135.

[74] Similar is the contractual right to medical benefits in pre-no-fault policies, a set-off for which has also been invalidated. See *Tuggle v Government Employees Ins Co,* 207 So 2d 674; 24 ALR3d 1343 (Fla, 1968); *Stephens v Allied Mutual Ins Co,* 182 Neb 562; 156 NW2d 133 (1968); *In the Matter of the Arbitration Between Hutchison and Hartford Accident & Indemnity Co,* 34 AD2d 1010; 312 NYS2d 789 (1970); *Taylor v State Farm Mutual Automobile Ins Co,* 237 So 2d 690 (La App, 1970).

[75] *Carnevale v Sentry Ins a Mutual Co,* 469 F Supp 681 (WD Pa, 1979).

One who has purchased uninsured motorist coverage would not expect to collect twice for the same economic loss and the insurer prevents this from happening through the set-off clause. But neither would he expect to have his uninsured motorist coverage reduced or eliminated altogether because of other coverage he has purchased. He would expect, even in the face of the set-off clause, that amounts paid by the insurer for economic loss would not reduce the amount payable for non-economic or excess economic loss.

In providing insurance against the uninsured motorist, the insurer promises the insured that his right of action for greater than threshold injuries will not be worthless if the tortfeasor turns out to be uninsured.

If the tortfeasor is insured or otherwise collectible, the insurer paying no-fault benefits has a statutory right to reimbursement for benefits theretofore paid by it only out of a recovery for those economic losses.[76] So, too, if the insurer contracts to make good for an uninsured motorist —coverage complementary and supplementary to the basic no-fault policy and standing in the place of third-party residual liability insurance—the insurer and the insured should have corresponding rights relative to amounts recoverable under an uninsured motorist endorsement; the insurer should be permitted a set-off only to the extent a recovery duplicates benefits it has already paid.

The insured is entitled to payment under the "all sums recoverable" language of the uninsured motorist endorsement for all economic and above the threshold non-economic loss for which an unin-

---

[76] MCL 500.3116; MSA 24.13116, as amended by 1978 PA 461.

See *Workman v Detroit Automobile Inter-Ins Exchange,* 404 Mich 477, 504 (opinion of the Court), 522 (opinion of LEVIN, J.); 274 NW2d 373 (1979).

sured motorist would be liable. Pursuant to the set-off clause, that total amount is reduced by the amount of no-fault benefits paid, and the remainder, not exceeding the limits of the endorsement, is the obligation of the insurer to the insured.

In *O'Donnell v State Farm Mutual Automobile Ins Co*,[77] this Court approved reduction of no-fault benefits by the amount of Social Security survivors' benefits. In that case both the no-fault benefits and the Social Security benefits set off were statutorily required; the insured's expenditures for both benefits were involuntary. No issue was there presented of the reasonable expectations of persons who had voluntarily paid an additional premium for coverage beyond that provided under the no-fault act which would be defeated by minimizing that coverage by deducting amounts paid under the required coverage.

Unless voluntarily purchased uninsured motorist coverage provides meaningful protection for severe, above-threshold, injuries without regard to what the insurer is required to pay under the mandatory no-fault coverage, it serves no apparent purpose in the context of a no-fault statute mandating the payment of benefits. If the set-off were enforced in the manner the insurers seek, no-fault benefits paid would reduce uninsured motorist coverage dollar for dollar. As soon as the insurer has paid out $20,000 in no-fault benefits, there would be no recovery whatsoever under the uninsured motorist endorsement. The insured could be entitled to collect substantial non-economic damages from the uninsured motorist but would, by reason of the set-off, receive nothing from the insurer.

---

[77] *O'Donnell v State Farm Mutual Automobile Ins Co*, 404 Mich 524; 273 NW2d 829 (1979).

If the set-off of no-fault benefits were to be enforced in the manner the insurers seek, it would mean that the uninsured motorist endorsement, designed to secure recovery from an uninsured motorist, would provide no recovery in those cases where the injuries are most severe because the severity of the injuries maximized the no-fault benefits for work loss or medical expenses. We agree with the reasoning of the Supreme Court of Colorado:

"[T]he reduction of uninsured motorist coverage by PIP amounts paid or payable actually penalizes those who are more seriously injured for as the PIP benefits increase, the amounts recoverable under uninsured motorist coverage decrease. Two insureds may pay the same premium for uninsured motorist coverage in the minimum amounts. The one with PIP-type losses of less than $15,000 may recover some amounts under his uninsured motorist coverage for losses not otherwise covered by PIP, whereas the more seriously injured insured who sustains PIP-type losses in excess of $15,000 would recover nothing under his uninsured motorist policy provisions."[78]

The insured paid premiums in exchange for coverage above and beyond that afforded under the no-fault act; the premium was not paid with the expectation that coverage would be afforded only in cases where no-fault benefits are paid in amounts substantially less than the limits of uninsured motorist coverage but non-economic loss is so severe as to entitle the insured to collect from the uninsured tortfeasor.

A contrary holding would tend to make the coverage illusory and defeat the reasonable expectations of insureds and the policy of the no-fault

[78] *Newton v Nationwide Mutual Fire Ins Co,* 197 Colo 462, 467; 594 P2d 1042 (1979).

act to distinguish between economic and non-economic loss.

We affirm the judgments of the Court of Appeals except in *Williams* and *Schigur,* where we reverse.

COLEMAN, C.J., and KAVANAGH, WILLIAMS, FITZGERALD, RYAN, and BLAIR MOODY, JR., JJ., concurred with LEVIN, J.